THE PHILADA HOME FUND, APPELLANT, v. BOARD OF TAX APPEALS ET AL., APPELLEES.

[Cite as Philada Home Fund v. Board of Tax Appeals, 5 Ohio St. 2d 135.]

136

(No. 39548—Decided February 16, 1966.)

*Messrs. Paxton & Seasongood, Mr. Murray Seasongood, Mr. Clyde M. Abbott, Mr. Harry Stickney* and *Mr. Leonard S. Meranus*, for appellant.

*Mr. William B. Saxbe*, attorney general, *Mr. Jon A. Ziegler, Mr. Melvin G. Rueger*, prosecuting attorney, and *Mr. Robert W. Worth*, for appellees.

BROWN, J. The question before the court is whether the decision of the Board of Tax Appeals refusing the claimed exemption is unreasonable or unlawful for the year in question.

The charitable purpose of the nonprofit corporation which owns this housing and holds it for rent only to aged and needy persons at or below cost may be admitted, but the exemption is claimed under Section 5709.12, Revised Code, which extends exemption only to property "that is used exclusively for charitable purposes." The only use of this property is for private residential housing. A long line of Ohio cases hold that property partly or incidentally used for private residence is nonexempt as not used exclusively for charitable purposes. Among the cases so holding are *Incorporated Trustees of Gospel Worker Society* v. *Evatt, Tax Commr.*, 140 Ohio St. 185; *Mussio* v. *Glander, Tax Commr.*, 149 Ohio St. 423; *Cleveland Branch of Guild of St. Barnabas for Nurses* v. *Board of Tax Appeals*, 150 Ohio St. 484; *Western Reserve Academy* v. *Board of Tax Appeals*, 153 Ohio St. 133 (although reversed in part as to exemption of public academies by our judgment in *Denison University* v. *Board of Tax Appeals*, 2 Ohio St. 2d 17, is still authority for the proposition that "residence in a dwelling with

a family is a private use of the premises and not a use exclusively for charitable purposes," as we held in *Doctors Hospital v. Board of Tax Appeals*, 173 Ohio St. 283).

Exemptions, even charitable ones, must be strictly construed. An estimated 13 per cent of the total property in Ohio is already exempt. See Charities and the Ohio Tax Laws, 18 O. S. L. J. 228, 237. Exemption of selected private residences from taxation is *pro tanto* a violation of constitutional requirements of tax uniformity. As pointed out in *Dayton Metropolitan Housing Authority* v. *Evatt, Tax Commr.*, 143 Ohio St. 10, 33, "the private homeowner whose property is located on the opposite side of the street from the property of the appellant [housing] authority should not be penalized in the support of his government by increased taxes upon his property to make good the loss of public revenues resulting from the tax exemption of the property of the authority, unless the people of the state, through constitutional or legislative enactment, clearly adopt a policy which makes such discrimination possible."

It is reasonable to assume that the tax valuation of the subject buildings would exceed 40 per cent of cost. Applying the Hamilton County tax rate against such a figure, it is found that exemption would equate to a monthly rental subsidy of approximately $30 for each of these apartments. Until the Legislature chooses to permit a similar exemption to all equally aged and needy residents of this state, or until the code of regulations and practice of Philada gives assurance that a benefit to the public generally commensurate with the loss of tax revenue is clearly present, we must hold that the claimed exemption violates the fundamental constitutional requirement of tax uniformity and equality, and that the proposed use is not exclusively charitable.

Our decision in this case is buttressed by the holding in *County of Douglas* v. *OEA Senior Citizens, Inc.*, 172 Neb. 696, 707, 111 N. W. 2d 719, wherein the court stated:

"* * * No definition of charity found in any available lexicon is sufficient upon which to declare what has been described in this record as exclusively charitable, that is that the furnishing of low-cost housing at its real cost is charitable."

The fact that it is contemplated that residents of the apart-

ments who are unable to pay the full rentals will be assisted by subventions from the Fund, the fact that contributions to the Fund have been designated as deductible charitable contributions by the Internal Revenue Service, and the fact that the property passing to the Fund under the will of Ada R. Seasongood was exempted from succession tax under Section 5731.09, Revised Code, are of value in determining that the purposes of the Fund are charitable, which is not disputed, but are not helpful or dispositive of the inquiry here which involves the twofold test of whether this real estate claimed to be exempt under Section 5709.12, Revised Code, is used exclusively for charitable purposes.

*Beerman Foundation, Inc.*, v. *Board of Tax Appeals*, 152 Ohio St. 179, is not authority for the claimed exemption as claimed by the appellant, but is merely an *ad hoc* adjudication against exemption.

In addition, it would appear clear to us that the prospective beneficiaries of the charitable Fund in question are so insufficiently defined by the broad classification, "aged and needy," as to make the denial of exemption reasonable and lawful even under the broadest possible application of Section 5709.12, Revised Code. The test is present exclusive use for charitable purposes. *Wehrle Foundation* v. *Evatt, Tax Commr.*, 141 Ohio St. 467. The future intended use test applied by this court in *Good Samaritan Hospital Assn. of Sandusky* v. *Glander, Tax Commr.*, 155 Ohio St. 507, has application only to real property of public or existing, established and operating institutions for charitable purposes in which the imminently intended use is clearly and exclusively charitable. The reason for exemption is present benefit to the general public sufficient to justify the loss of tax revenue. *Young Men's Christian Assn. of Omaha* v. *Douglas County*, 60 Neb. 642, 83 N. W. 924, 52 L. R. A. 123.

The decision of the Board of Tax Appeals, being neither unreasonable nor unlawful, is, therefore, affirmed.

*Decision affirmed.*

ZIMMERMAN, MATTHIAS and HERBERT, JJ., concur.

TAFT, C. J., O'NEILL and SCHNEIDER, JJ., dissent.

SCHNEIDER, J., dissenting. There are many attitudes as to the office of a dissenting opinion. I employ it in this case not so much to fault the majority as to spread upon the record that the instant case and *Jewish Hospital Assn. of Cincinnati v. Board of Tax Appeals*, 5 Ohio St. 2d 179, becloud the tax-exempt status, if they do not remove it completely, of every home for the aged and indigent members of every fraternal and religious society throughout the state of Ohio. Even the exempt status of the ordinary buildings of recognized non-profit public but privately owned charitable hospitals is now in doubt, although the majority would be quick to deny it.

At best, the court has created an anomaly whereby a hospital of that character catering to the well-to-do of a Cleveland suburb, which has an accumulated earned surplus of $700,000 and whose nonpaying patients annually average less than seven per cent of the total patient load, is exempt from taxation (*Vick v. Cleveland Memorial Medical Foundation* [1965], 2 Ohio St. 2d 30), but the land and building of an institution such as Philada, which is perpetually devoted to providing housing for the aged and indigent, are taxable. The majority has decided, in effect, that, although one who is ill but fully able to pay for the treatment of his illness may receive that treatment in a tax-exempt hospital, even though substantially every other patient is equally free from financial need (*Taylor, Admr., v. Protestant Hospital Assn.*, 85 Ohio St. 90; *O'Brien, Treas., v. Physicians Hospital Assn.*, 96 Ohio St. 1), one who is aged and without the resources with which to provide himself and his dependents with safe and sanitary housing may not have that need fulfilled by the Philada Home Fund free of taxation.

Whether the result is meritorious or not is beside the point. We are not composed to determine policy and I have no doubt that the majority is as sincerely convinced that its view is in accord with the constitutional and legislative policy of this state as I am that my view exemplifies that policy. This is not a novel situation. If there is a reported case on tax exemption involving residential use of property within the last century which was decided without a division of this court, I have yet to discover it. I dissent in order to record that which I believe is the import of today's decision so that the public and the General Assembly may be governed accordingly. I well recognize

that much of this ground has been plowed before. However, one more furrow will not destroy the crop.

The majority has allowed itself to be caught in the web of misapprehension of the state's tax-exemption policy, the first strand of which was spun nearly 50 years ago in *Benjamin Rose Institute* v. *Myers, Treas.* (1915), 92 Ohio St. 252, and enlarged by a long succession of divided decisions. In *Benjamin Rose*, Chief Justice Nichols, gratuitously construed the 1912 amendment to Section 2 of Article XII of the Constitution as an "expression of the public will * * * justifying a strict interpretation of all laws and statutes exempting property from taxation,"[1] More than ten years later, in *Jones, Treas.*, v. *Conn et al., Trustees* (1927), 116 Ohio St. 1, 10, Judge Allen, relying on *Benjamin Rose*, by obiter dictum cavalierly dismissed the import of the 1912 amendment as shifting the emphasis for tax exemption of property "from the ownership thereof to the manner of its use."[2] I propose to show that that amendment had no such effect.

The issue is simply this: Does Section 5709.12 of the Revised Code extend tax exemption to property *belonging* to institutions used exclusively for charitable purposes but *only if the property itself is used exclusively for charitable purposes*, or does that section mean what it says in clear and unmistakable language that "real and tangible personal property *belonging* to institutions [that is][3] used exclusively for charit-

[1] 92 Ohio St. 252, 271. The statement was wholly *obiter* for two reasons: The 1912 constitutional amendment was not operative upon the facts of the case and the decision had been reached on page 270. Clearly, then and now, property which is rented from a charitable institution by commercial interests is not tax exempt.

[2] It should be noted that the enactment in 1945 of Section 5328-1a, General Code (121 Ohio Laws 241, 242; now Section 5709.04, Revised Code), specifically exempts intangible property held taxable in *Jones*. Under the rule of *Denison University* v. *Board of Tax Appeals*, 2 Ohio St. 2d 17, this is a valid exercise of the power of exemption.

[3] The phrase, "that is," is bracketed because it was enacted as a recodifying amendment in the adoption of the Revised Code in 1953. To the extent that it creates ambiguity, it must be excluded from consideration under the provisions of Section 1.24, Revised Code. The insertion by the Bureau of Code Revision was undoubtedly prompted by the fact that this court, over the years, has erroneously construed the section as if the phrase were properly adopted.

able purposes shall be exempt from taxation." If the latter is true, then the issue is: Did the General Assembly have the power to grant that exemption?

Section 2 of Article XII of the Constitution of 1851 authorized the General Assembly, by general laws, to exempt from taxation "burying grounds, public schoolhouses, houses used exclusively for public worship, institutions of purely public charity, [and] public property used exclusively for any public purpose * * *." Promptly after the adoption of the Constitution and pursuant to that grant of power, the General Assembly, by the 6th paragraph of Section 3 of the Act of April 13, 1852, exempted from taxation "all buildings *belonging* to institutions of purely public charity, together with the land [land being defined in section 2 of the act as including buildings] actually occupied by such institutions not leased or otherwise used with a view to profit; and all moneys and credits appropriated solely to sustaining and belonging exclusively to such institutions." (Emphasis added.) This broad and unequivocal exemption excluded only land not actually occupied by such institutions and land or buildings which were leased or otherwise used with a view to profit. That language remained intact until 1910 (with one exception noted in the footnote) through six successive amendments to the original act and through the codification of the Revised Statutes.[5]

The recodificaion of February 1910 brought the language of Section 2732, Revised Statutes, into Section 5353, General Code, which read in pertinent part as follows: "* * * property *belonging* to institutions of public charity only, shall be exempt from taxation." (Emphasis added.) Note that the word, "property," substituted for "buildings" by the act of 1908, was retained, and that the phrase, "together with the land actually occupied by such institutions not leased or otherwise

---

[4]50 Ohio Laws 135, 137.

[5]56 Ohio Laws 175, 178; 61 Ohio Laws 42, 43; Revised Statutes 2732; 88 Ohio Laws 95, 96; 91 Ohio Laws 216; 91 Ohio Laws 393, 394; and 99 Ohio Laws 449 (1908). In the latter act, the word, "property," was substituted in lieu of "buildings" as the second word in the paragraph. The only possible effect of this change was to broaden the operation of the statute. See the opinion of Judge Johnson in *Myers, Treas.*, v. *Benjamin Rose Institute*, 92 Ohio St. 238, at page 247.

used with a view to profit; and all moneys and credits appropriated solely to sustain and belonging exclusively to said institutions," was deleted and that the words, "purely public charity," were changed to read, "public charity only."

Under the state of the law then, that is, immediately after 1910 and before the 1912 constitutional amendment, there would appear to be no impediment to exemption of the property involved in this case or in *Jewish Hospital Assn. of Cincinnati* v. *Board of Tax Appeals, supra*. There is no question that both institutions involved are "of public charity only." There is no question that the property is "not leased or otherwise used with a view to profit," even if that limitation survived the recodification, as it probably did.

Nothing in the case law would have detracted from the exemption. *Morning Star Lodge* v. *Hayslip, Treas.* (1872), 23 Ohio St. 144, held merely that a lodge fund limited to relieving sick and needy *members* of the order was not an institution of purely public charity, and *Gerke, Treas.,* v. *Purcell* (1874), 25 Ohio St. 229, had held that a parsonage, although built on ground which might otherwise be exempt as attaching to the church edifice, did not come within the exemption because it was a place of private residence and not used exclusively for *public worship*. The question of whether the church was an institution of purely public charity remained for determination in *Waterson* v. *Halliday, Aud.* (1907), 77 Ohio St. 150, 179, where the court, in denying tax exemption to a parsonage, characterized the church as follows: "* * * it is a *religious* institution primarily, and its charity is subordinate to its spiritual teachings, and consequently the exemption claimed is not authorized * * * [by the statute]." Meanwhile, *Humphries, Aud.,* v. *Little Sisters of the Poor* (1876), 29 Ohio St. 201, had held that The Little Sisters of the Poor constituted a tax-exempt institution of purely public charity, and that they operated a home for destitute men and women and the incurable sick and blind, irrespective of their nationality or creed. The exemption was granted to property owned but denied as to property leased. The statement of facts reveals that the nine members of the institution, the Sisters, had their residences within the buildings of the institution.

What change was wrought by the constitutional amendment

144

proposed in the Constitutional Convention of 1912 and adopted effective in 1913? In the report of the debates of that convention, volume 2, page 1880, the motivation for substituting "used exclusively for charitable purposes" to modify "institution," in place of "of purely public charity," is recorded for all who would read.[6]

[6]In view of the scarcity of volumes, the debate on this amendment is reproduced in its entirety:

"Mr. Winn: I offer an amendment.

"The amendment was read as follows:

"In line 15 strike out the words 'of purely public charity,' and insert in lieu thereof the words, 'used exclusively for charitable purposes.'

"Mr. Winn: If I may have your attention for just a minute I will explain the importance of this amendment. It will not exempt from taxation any property now taxed, but it will make constitutional some laws enacted by the General Assembly exempting certain property from taxation, which laws are now unconstitutional. I will call your attention to three institutions in the city of Springfield, used exclusively for charitable purposes. For thirteen years I was intimately connected with one of them, which was the Pythian Home, at which there are now being kept, housed, clothed and educated at the hands of the members of the order of the state two hundred little boys and girls. Since that institution was established, probably fifteen or sixteen years ago, there had been admitted to that institution probably five or six hundred orphan children. Just out to the right of this institution is the Masonic Home, where old men and old women who are not able to support themselves, and who but for that institution would be public charges, are given a home and all the comforts of life during their old age. Just off to the left of the Pythian Home is the Odd Fellows institution where orphan children, old men and old women are kept. There are other institutions of that sort. I know one in the city of Cleveland, a splended institution, maintained by the Jews. There are institutions of a similar kind maintained by capitalists and maintained by other civic institutions besides those which I have mentioned.

"Mr. Mauck: Was it not decided by the Supreme Court under our present Constitution that The Little Sisters of the Poor in Cincinnati was an institution purely for public charity and was, therefore, exempt?

"Mr. Winn: I hope so; I did not know it.

"Mr. Mauck: I know so.

"Mr. Winn: A few years ago the members of these different fraternities and different societies and organizations came before the General Assembly and asked the General Assembly to pass a law exempting them from taxation, and that law was passed almost unanimously. But I have always had very grave doubts respecting the constitutionality of that law. A committee of these institutions has visited some of the members of this Convention since we have been here and has asked that this be inserted,

Delegate Winn first calls attention to three institutions located then and now in the city of Springfield: the Pythian Home for orphans, the Masonic Home for the Aged and the Odd Fellows Home for orphans and aged persons, all of which he characterizes as "used exclusively for charitable purposes."

It is universally recognized that those institutions admitted only members or dependents of members of the respective societies and further that residential quarters were maintained on their grounds for such members of the staff as might be convenient to the institution.

Delegate Winn points out that a few years prior the members of "these different fraternities and different societies and organizations came before the General Assembly and asked * * * [it] to pass a law exempting them from taxation and that law was passed almost unanimously. But I have always had very grave doubts respecting the constitutionality of that law. A committee of these institutions has visited some of the members of this Convention since we have been here and has asked that this be inserted, removing all doubt on the subject. It will not exempt any property from taxation that is now taxed, but it will make constitutional the exemption of all institutions used purely for charitable purposes." The amendment was agreed to.

What law was the delegate referring to? The answer may not readily be found without reference to Part 2 of the General Code of 1910, in which is found Section 5364. Because of obvious errors in recodification, further reference must be made to 93 Ohio Laws 219 and 94 Ohio Laws 371. Those acts (codified in General Code Section 5364) purported to exempt all property belonging to certain organizations and lodges (Odd Fellows, Knights of Phythias and Masons included by name), which property was not operated with a view to profit and was intended to create a fund, or was used or intended to be used, for the care and maintenance of indigent members of

removing all doubt on the subject. It will not exempt any property from taxation that is now taxed, but it will make constitutional the exemption of all institutions used purely for charitable purposes. I hope the amendment will be agreed to and I hope the agreement will be unanimous.

"The amendment was agreed to."

those organizations and the widows, orphans and beneficiaries of deceased members of such organizations.

If the intent of the Convention was merely to eliminate the doubtful constitutionality of Section 5364 of the General Code, why did it not simply delete the words, "purely public," leaving the phrase, "institutions of charity," remaining? This would have accomplished the purpose. But it would also have vitiated the promise of the delegate that the amendment would not exempt any property from taxation which was, in fact, then taxed, because it would have permitted the exemption of institutions, or of property of institutions, having both charitable as well as fraternal, benevolent and other characteristics. It must also be presumed that the delegates were fully aware of the then recent decision of *Waterson* v. *Halliday, Aud., supra,* in 1907, in which the Church was characterized as primarily a religious institution and that a parish house thereof was not exempt because it did not belong to an institution of purely or exclusively public charity.[7]

Thus, the words, "used exclusively for charitable purposes," fitted exactly the purpose and intent of the Convention. For example, the Odd Fellows is an institution devoted to fraternal and charitable purposes. Its Springfield home, on the other hand, is an institution *of* that organization, devoted to or used exclusively for charitable purposes. The conclusion is inevitable that those words refer to an institution whose purposes are unalloyed with other purposes, be they fraternal, benevolent, religious or educational.

Nor should the language of the amendment be considered as having the effect of requiring the taxation of any property then exempt, because educational institutions and houses used exclusively for public worship enjoyed exemption by virtue of other language in the Constitution and other statutes in force in 1912.

The foregoing analysis leaves no room for the contention

---

[7]As Judge Robinson said in *Tax Commission* v. *Security Savings Bank & Trust Co. of Toledo, Trustee,* 117 Ohio St. 443, 450: "The Legislature is presumed to know the decisions of this court * * *." The principle would be equally applicable to a constitutional convention.

that the purpose of the amendment was to further limit tax exemption. Indeed, its *only* purpose was to enlarge the scope of permissible exemptions.

Section 5353 of the General Code was not amended to conform with the language of the Constitutional amendment until 1923. But this interval of time does not require the construction that the General Assembly intended its language to be of more limiting effect than the identical language adopted by the Constitutional Convention. The conclusion is inescapable that the 1923 amendments[6] did not narrow the exemption to property *used* exclusively for charitable purposes as distinguished from the ownership of the property, as thought to be the case by Judge Allen in *Jones, Treas.,* v. *Conn et al., Trustees, supra.* That conclusion is fortified by the fact that that amendatory act also repealed Section 5364, as well as Sections 5354, 5355 and 5358 (the latter three relating to armory buildings, the property of fire companies owned by county townships, cities, or villages) and amended Section 5351 by adding the words, "public property used for a public purpose." Clearly, the amendments of 1923 were corrective and conforming rather than substantive, and an intent to remove tax exemption from four distinct classes of property, which are fairly includable within general language simultaneously added to the Code, cannot seriously be imputed to them.

The next following event was the adoption in 1929 of the amendment to Section 2, Article XII of the Constitution, which added the words, "without limiting the general power, subject to the provisions of Article I of this Constitution, to determine the subject and methods of taxation or exemptions therefrom," to precede the words, "general laws may be passed to exempt * * *." In *Denison University* v. *Board of Tax Appeals* (1965), 2 Ohio St. 17, we have construed that amendment as granting plenary power to the General Assembly to select subjects for exemption.

Parenthetically, it should be added that *Atwell* v. *Board of Park Commrs.,* 2 Ohio St. 2d 257 (decided on authority of and

---

[6]110 Ohio Laws 77.

less than three months after *Denison*), necessarily establishes that the words, "property belonging to," are to be given literal effect.

In 1945, the General Assembly exercised that plenary power in enacting Section 5328-1a, General Code (121 Ohio Laws 241, 242), to exempt certain described intangible property belonging to specific public-purpose organizations, the limitation being that no part of the net earnings of those organizations inure to the benefit of any private shareholder or individual or be used for propaganda. Also in 1945, Section 5353, General Code, was re-enacted so as to excise intangible property therefrom and to provide that real and tangible personal property *belonging* to institutions used exclusively for charitable purposes shall be exempt from taxation *without any limitation whatsoever*.

Such is the present posture of the Constitution and the statutory enactments pursuant thereto. The conclusion follows inescapably that real and tangible property shall be exempt from taxation (1) if it belongs to a nonprofit institution, (2) if that institution is so constituted that its property and energies are used exclusively for charitable purposes, that is, undiluted by fraternal, benevolent, educational or religious purposes,[9] and (3) if the exemption thus created does not transgress the limitations of Section 2, Article I of the Constitution, so as to confer an unreasonable benefit on the property of the institution and to deny the equal protection of the laws to those not similarily benefited.

The adoption of this position by the court would probably require the reversal, in addition to the present case and *Jewish Hospital Assn. of Cincinnati* v. *Board of Tax Appeals, supra*, of but two prior decisions: *Doctors Hospital* v. *Board of Tax Appeals* (1962), 173 Ohio St. 283[10], and *Beerman Foundation,*

---

[9]It might also be said that an institution which engages in commercial as well as charitable activities as an owner or partner, even though the income from such activities is used for charity, is not an "institution used *exclusively* for charitable purposes" to the extent that it is commercially engaged.

[10]A change in the operative facts might bring this case within the rule of *Denison University* v. *Board of Tax Appeals*, 2 Ohio St. 2d 17.

*Inc.,* v. *Board of Tax Appeals* (1949), 152 Ohio St. 179, both involving the residential use of property.

By no other rationale can the so-called *"ad hoc"* case of *Goldman, a Taxpayer,* v. *Friars Club* (1952), 158 Ohio St. 185, be justified to the extent exemption was granted to certain organizations involved therein. Fully validated would be *Aultman Hospital Assn.* v. *Evatt, Tax Commr.* (1942), 140 Ohio St. 114.

Fully justified also would be the position of the Board of Tax Appeals as to part of the property in *Mussio* v. *Glander, Tax Commr.* (1948), 149 Ohio St. 423. (Residence for nuns engaged in activities benefitting the needy.) That portion of the property now could be granted tax exemption under Section 5713.04, Revised Code, as amended subsequent to that decision.

*American Committee of Rabbinical College of Telshe, Inc.,* v. *Board of Tax Appeals* (1947), 148 Ohio St. 654, would be affected no more than it was by *Denison University* v. *Board of Tax Appeals, supra.*

Undisturbed would be the decisions involving the residential use of property in *Gerke, Treas.,* v. *Purcell, supra; Waterson* v. *Halliday, Aud., supra* (both cases involving parish houses of purely religious institutions); *Incorporated Trustees of Gospel Workers Society* v. *Evatt, Tax Commr., supra* (living quarters for employees of religious society); *Society of the Precious Blood* v. *Board of Tax Appeals* (1948), 149 Ohio St. 62 (living quarters of employees of society engaged primarily in missionary and religious activities, *i. e.,* promulgating religious views); and *Cleveland Branch of Guild of St. Barnabas for Nurses* v. *Board of Tax Appeals* (1948), 150 Ohio St. 484 (residence for professional nurses owned by institution for religious and social purposes).

The real question in this case is whether Philada is *charitable.* The trustees, in an apparent attempt to exclude potentially irresponsible tenants, have established a prima facie rental charge which, under the usual rule of thumb that up to one-fourth of the gross income of a family may be expended for shelter, would prevent couples having a gross annual income of less than $3,600 ($75 per month x 12 x 4) from admission. This is $400 per year in excess of the maximum income limita-

tion for admission of a couple to an apartment in the "senior citizen" residence facilities of the Cincinnati Metropolitan Housing Authority. That standard is an indication of the community's criteria for financial need for safe and sanitary housing.

The regulations of the trustees fail also to provide a standard for continued occupancy or for incidental care to be afforded the tenants. These aspects may or may not have been decisive in the conclusion reached by the majority. However, the fact that the Philada Home, at the time of this record, had not as yet opened its doors, has apparently been ignored. Although the practical operation of a charity ought to control over whatever potential abuse may lurk in the general language of its governing regulations, in the absence of a history of operation every favorable inference ought to be indulged from the stated purposes.

The trustees' regulations may even have served to defeat the intent of the donors of the Philada Home Fund. But I suggest that whether an institution is charitable in operative fact is a proper subject for the exercise of the visitorial powers of the Attorney General,[1] not for a proceeding to determine tax exemption. Therefore, for the Board of Tax Appeals or a reviewing court to question the purposes of the testamentary gift which was the source of Philada or to gainsay its articles of incorporation is unreasonable and unlawful.

TAFT, C. J., and O'NEILL, J., concur in the foregoing dissenting opinion.

---

[1] See *Commonwealth, ex rel. Ferguson, Atty. Genl.,* v. *Gardner,* Ky., 327 S. W. 2d 947, 74 A. L. R. 2d 1059; *Chambers* v. *Baptist Education Society,* 40 Ky. 215, 220; *Brown, Atty. Genl.,* v. *Memorial National Home Foundation* (1958), 162 Cal. App. 2d 513, 329 P. 2d 118; *In re Estate of Quinlan,* 233 Minn. 35, 45 N. W. 2d 807; 4 Scott on Trust 2 Ed. 2753, Section 391; Bogart on Law of Trusts 4 Ed. 401, Section 156.