National Church Residences of Chillicothe, Ohio et al., Appellants, v. Lindley, Tax Commr., Appellee.

[Cite as National Church Residences v. Lindley (1985), 18 Ohio St. 3d 53.]

(No. 84-1113—Decided June 26, 1985.)

*Lucas, Prendergast, Albright, Gibson & Newman* and *Rankin M. Gibson Co., L.P.A.,* for appellants.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Mark A. Engel,* for appellee.

*Per Curiam.* The question presented for review is whether the sale of building materials and supplies to appellants for incorporation into their

respective apartment facilities qualifies for the tax exemption provided under R.C. 5739.02(B)(12).

R.C. 5739.02, which levies a tax on all retail sales in this state, provides in relevant part:

"(B) The tax does not apply to the following:

"* * *

"(12) Sales of tangible personal property or services to churches and to nonprofit organizations operated exclusively for charitable purposes in this state, no part of the net income of which inures to the benefit of any private shareholder or individual and no substantial part of the activities of which consist of carrying on propaganda or otherwise attempting to influence legislation.

"Charitable purposes means the relief of poverty, the improvement of health through the alleviation of illness, disease, or injury * * * [or] the operation of a home for the aged, as defined in section 5701.13 of the Revised Code * * *."

In levying the assessments on the materials and supplies used in the construction of Hopeton Village and Stygler Village, the commissioner essentially determined that the apartments were not used exclusively for "charitable purposes" as that term is used within R.C. 5739.02(B)(12), or as the term has been interpreted by prior decisions of this court. At the outset, we are mindful that when reviewing a decision of the Board of Tax Appeals this court will not act as a trier of fact *de novo* but, instead, will limit its review in accordance with R.C. 5717.04 to a determination of whether the board's decision is "reasonable and lawful." *Operation Evangelize* v. *Kinney* (1982), 69 Ohio St. 2d 346, 347 [23 O.O.3d 315]; *Citizens Financial Corp.* v. *Porterfield* (1971), 25 Ohio St. 2d 53 [54 O.O.2d 191], paragraph one of the syllabus. In addition, it is axiomatic that statutes granting exceptions or exemptions from taxation are to be strictly construed. *Southwestern Portland Cement Co.* v. *Lindley* (1981), 67 Ohio St. 2d 417, 425 [21 O.O.3d 261]; *Quaker Apartments* v. *Kosydar* (1974), 38 Ohio St. 2d 20, 23 [67 O.O.2d 36].

On numerous occasions this court has examined the taxable nature of property rented to aged, needy or infirm persons, at or below cost, which property is claimed to be exempt from taxation as being operated exclusively for charitable purposes. The rule which has emerged is that the furnishing of low-cost housing at or below market prices, where residents pay a part or all of their rental costs, is not, in and of itself, an exclusive use of the property for charitable purposes. *St. Barnabas* v. *Bd. of Tax Appeals* (1948), 150 Ohio St. 484 [38 O.O.329]; *Beerman Foundation* v. *Bd. of Tax Appeals* (1949), 152 Ohio St. 179 [39 O.O. 462]; *Philada Home Fund* v. *Bd. of Tax Appeals* (1966), 5 Ohio St. 2d 135 [34 O.O.2d 262]; *Quaker Apartments* v. *Kosydar* (1974), 38 Ohio St. 2d 20 [67 O.O.2d 38].

In *St. Barnabas, Beerman Foundation,* and *Philada Home Fund,* charitable tax exemptions were denied to residential accommodations

dedicated respectively to providing low-income housing to student nurses, World War II veterans, as well as aged and needy persons. In each case, residents paid rent at or below the market rates for comparable accommodations. While recognizing the laudable purpose of the activity in *Beerman Foundation,* the exemption was nevertheless denied. The court stated:

"We agree with counsel for applicant in the instant case that housing for the needy, aged, sick, orphans or widows is charity entitling the property so used to be exempted from taxation. However, we are of opinion that such housing would not be used exclusively for charitable purposes if each and every occupant was required to pay for accommodations." *Id.* at 182.

In *Philada Home Fund,* the court reasoned as follows:

"Real property owned by a nonprofit charitable corporation the stated purpose of which is to secure and operate resident apartments for aged and needy persons is not exempt from taxation * * * even though it is shown that the rent intended to be charged is at or below cost, and in no event to result in a profit, and that it is expected that some persons unable to pay the full rental will be assisted by subventions from corporate funds." *Id.* at the syllabus.

As the commissioner correctly contends, however, our decision in *Quaker Apartments* v. *Kosydar, supra,* is dispositive of appellants' requested exemptions. In that case, a nonprofit Ohio corporation constructed an eighty-unit apartment complex which, as in the case at bar, obtained financial assistance from HUD. Federal rent subsidies were available to tenants who were at least sixty-two years of age or handicapped. The amount of each subsidy was contingent upon the tenant's income and assets, but in no event could a subsidy exceed seventy percent of the rental value of the apartment. Like the present case, the rental payments and the subsidies were forwarded directly to the taxpayer who received, in the final analysis, the monthly market price for each apartment. In addition, none of the apartments was available rent free, and the taxpayer reserved the right to initiate eviction proceedings for nonpayment of rent.

On these facts, involving the identical tax as was assessed in the cause *sub judice,* the court affirmed the denial of a sales tax exemption, stating in the syllabus:

"The operation on a nonprofit basis of an apartment building for low income tenants, for whom supplemental rent payments are made by an agency of the federal government, is not exclusively for charitable purposes within the meaning of R.C. 5739.02(B)(12), where all tenants must pay at least a part of their rent, nonpayment of rent will result in eviction, and no services other than those common to apartment buildings generally are provided for the tenants."

Appellants, however, seek to circumvent the holdings of the aforementioned cases by requesting that this court resurrect the rule recognized in *Carmelite Sisters, St. Rita's Home* v. *Bd. of Review* (1969), 18 Ohio St. 2d 41 [47 O.O.2d 159]. The issue confronting the court in *Carmelite Sisters* was whether a home for the aged and infirm should be exempt from contributing to the Unemployment Compensation Fund as having been "organized and operated exclusively for * * * charitable * * * purposes" within the purview of R.C. 4141.01(B)(2)(h). *Id.* at 43. In order to resolve the issue, the court relied upon cases involving charitable tax exemptions to determine whether the home was being operated exclusively for charitable purposes. As in previous cases construing charitable exemptions for homes for the aged, the home was operated by a nonprofit corporation, and residents paid a monthly charge to defray expenses. Admission was contingent upon the applicant being at least sixty-five years of age and having a need for the services provided by the home.

The exemption in *Carmelite Sisters* was granted, with the court stressing the differences between the services provided at St. Rita's Home and those considered in *Philada Home Fund.* In *Carmelite Sisters,* a doctor was on call at all times and practical nurses were employed at the facility on a daily basis. In addition to caring for residents in a medical sense, as well as aiding residents with day-to-day activities, the home also provided meals and dietary care. It was the nature of these services, which were above and beyond those traditionally provided to apartment residents, that led the court to conclude that the applicant was indeed using the property for charitable purposes. *Id.* at 44.

After the issues in *Carmelite Sisters* were framed, but prior to our consideration of the case, the General Assembly amended several tax exemption statutes, including R.C. 5739.02(B)(12), and enacted R.C. 5701.13[2] effective May 31, 1968. The result of the amendments was to supplant the "services exception" established in *Carmelite Sisters* and to impose a requirement that in order for low-rent apartments for the aged, similar to those in the present case, to be eligible for tax-exempt status, the facilities must meet the criteria contained in R.C. 5701.13. Accord *Toledo Retirement Living* v. *Bd. of Tax Appeals* (1971), 27 Ohio St. 2d 255 [56 O.O.2d 153].

The requirements set forth under R.C. 5701.13 are specific, obligating the party seeking tax exempt status to provide lodging, prepared food, custodial care, medical and nursing care, as well as additional services for

---

[2] R.C. 5701.13 provides, in part:

"As used in Title LVII of the Revised Code, and for the purpose of other sections of the Revised Code which refer specifically to Chapter 5701. or section 5701.13 of the Revised Code, a 'home for the aged' means a place of residence for aged persons which meets all of the following standards:

"(A) It is owned or operated by a corporation, unincorporated association, or trust of a charitable, religious, or fraternal nature, which is organized and operated not for profit, and

the "full care" of residents. R.C. 5701.13(D). In addition to these and other requirements, not more than ninety-five percent of the expenses for operating the home may come from the residents or be paid to the home on their behalf. R.C. 5701.13(B).

In addressing the above-described requirements, this court has held that the provision of one meal daily is insufficient to qualify as having offered prepared food, and that occasional visits by a doctor or the employment of part-time nurses who simply dispense medications, does not satisfy the provision of the statute requiring that medical and nursing care be available for residents. *S.E.M. Villa II* v. *Kinney* (1981), 66 Ohio St. 2d 67 [20 O.O.3d 60]; *Ohio Presbyterian Homes* v. *Kinney* (1984), 9 Ohio St. 3d 90. As demonstrated by the record, briefs, and by the oral argument in this appeal, appellants are not seeking an exemption pursuant to the qualifications contained within R.C. 5701.13, recognizing that they are not in compliance with that statute. Instead, appellants contend their case falls within a "gray" area, something short of the requirements set forth under R.C. 5701.13, yet still charitable in nature, thus justifying an exemption under R.C. 5739.02.

Suffice it to say that any charitable activities which occurred in the case at bar were provided by volunteer agents or benevolent organizations, and not by appellants who simply contacted these persons or organizations for the purpose of having them provide services for their residents. In the final analysis, appellants are attempting to obtain a vicarious charitable exemption similar to the theory advanced by the taxpayer and rejected by this court in *OCLC Online Computer Library Center, Inc.* v. *Kinney* (1984), 11 Ohio St. 3d 198. We find appellant's argument untenable and again repeat that the furnishing of low-cost housing at or below market prices, to residents who pay part or all of their rental costs, is not an exclusive use of the property for charitable purposes which

---

which is not formed for the pecuniary gain or profit of, and whose net earnings or any part thereof is not distributable to, its members, trustees, officers, or other private persons.

"(B)  Not more than ninety-five per cent of the expenses of caring for the residents of such home comes from the residents or is paid to the home in behalf of the residents. * * *

"* * *

"(D)  The following services are available, as needed by residents of the home, and shall be provided, at or below reasonable cost, for the life of each resident without regard to his ability to continue payment for the full cost thereof:

"(1)  Lodging;

"(2)  Prepared food;

"(3)  Custodial care;

"(4)  Medical and nursing care;

"(5)  Such additional services as may be required for the full care of the resident.

"A service is provided, within the meaning of this division, if the home pays, or guarantees the payment, for all reasonable costs of securing such service on behalf of each resident and it can be secured without unreasonable inconvenience to the residents.

"Exemption from taxation shall be accorded, on proper application, only to those homes which meet the standards and provide the services specified in this section."

will result in a tax exemption. *St. Barnabas* v. *Bd. of Tax Appeals; Beerman Foundation* v. *Bd. of Tax Appeals; Philada Home Fund* v. *Bd. of Tax Appeals; Toledo Retirement Living* v. *Bd. of Tax Appeals; Quaker Apartments* v. *Kosydar, supra.*

For the foregoing reasons, the decision of the Board of Tax Appeals, being neither unreasonable nor unlawful, is affirmed.

*Decision affirmed.*

CELEBREZZE, C.J., SWEENEY, HOLMES, C. BROWN, DOUGLAS and WRIGHT, JJ., concur.

LOCHER, J., concurs in judgment only.