NBC-USA HOUSING, INC.–FIVE, D.B.A. LOVE ZION MANOR, APPELLANT, *v.*
LEVIN, TAX COMMR., ET AL., APPELLEES.
[Cite as *NBC-USA Hous., Inc.–Five v. Levin*,
125 Ohio St.3d 394, 2010-Ohio-1553.]

*Real property taxation — Charitable-use exemption unavailable for residential*
*property — R.C. 5709.12(B).*

(No. 2009-0919 — Submitted February 16, 2010 — Decided April 12, 2010.)

APPEAL from the Board of Tax Appeals, No. 2006-N-1492.

_____

LANZINGER, J.

{¶ 1} Appellant, NBC-USA Housing, Inc.–Five, d.b.a. Love Zion Manor ("NBC"), appeals from the denial of its application to exempt its real property from taxation. The property is improved with government-subsidized apartments that NBC leases to low-income handicapped and aged tenants, and NBC seeks exemption on the ground that the property is "used exclusively for charitable purposes" pursuant to R.C. 5709.12(B). The tax commissioner denied the exemption, the Board of Tax Appeals ("BTA") affirmed that denial, and NBC has appealed to the court. Because we agree with the BTA that the case law forecloses NBC's claim of charitable exemption, we affirm.

**Facts**

{¶ 2} NBC is a nonprofit 501(c)(3) entity that is jointly operated by the National Baptist Convention and a local church, Love Zion Baptist. NBC owns and operates a federally subsidized apartment complex for low-income tenants in northeast Columbus. The local church sponsors the project pursuant to a memorandum of understanding with the national convention. The complex consists of 25 one-bedroom units, and the property is maintained by NBC itself,

not by the tenants. NBC and the local church also offer Bible study and social events for the tenants. Other services include blood-pressure and diabetes screening, but those services are not provided by NBC. Instead, NBC helps its tenants obtain those services from third-party providers.

{¶ 3} The complex is federally subsidized through the Section 202 program, administered by the Department of Housing and Urban Development. To qualify to be a tenant of NBC under federal guidelines, applicants must have low income and be 62 or older or physically disabled. Rent is adjusted in accordance with income. All proceeds are used to provide a safe and sanitary place for tenants to live.[1]

{¶ 4} On June 23, 2004, NBC filed an application for exemption under R.C. 5709.12 for tax year 2003 and remission for preceding years. The tax commissioner denied the exemption by final determination dated August 8, 2006. In that determination, the commissioner held that as property leased for residential purposes, the property at issue could not qualify for exemption in spite of the nonprofit status of the owner and the charitable-minded motives behind the endeavor.

{¶ 5} NBC appealed to the BTA, and at the evidentiary hearing, the owner presented testimony of the property manager along with supporting exhibits. In a decision issued on April 21, 2009, the BTA affirmed the commissioner's denial of the exemption. In doing so, the BTA observed that the Supreme Court and the BTA "have previously held that property used for private residential housing, including properties where low-income individuals are not fully responsible for their rent, is not entitled to exemption under R.C.

---

1. These criteria reflect the requirements of the federal subsidy program but do not qualify it as a "home for the aged" that would be explicitly exempt under R.C. 5709.12(B). R.C. 5701.13 defines "home for the aged" to include nursing homes, "adult care facilities," and "residential care facilities" that must be licensed or be provided only for members eligible by reason of service to an institution. Some independent-living facilities associated with the licensed facilities are included in the exemption under R.C. 5709.12(C).

5709.12(B)." *NBC-USA Hous., Inc.–Five v. Wilkins* (Apr. 21, 2009), BTA No. 2006-N-1492, at 10. As for NBC's additional claim that it was entitled to exemption as a charitable institution under R.C. 5709.121, the board held that there was no jurisdiction because NBC had not presented the claim to the commissioner and had not specified it as error in the notice of appeal. Id. at 5, fn. 1.

**Analysis**

{¶ 6} More than 40 years ago in *Philada Home Fund v. Bd. of Tax Appeals* (1966), 5 Ohio St.2d 135, 34 O.O.2d 262, 214 N.E.2d 431, syllabus, we articulated the principle that controls the present case:

{¶ 7} "Real property owned by a nonprofit charitable corporation the stated purpose of which is to secure and operate resident apartments for aged and needy persons is not exempt from taxation under Section 5709.12, Revised Code, even though it is shown that the rent intended to be charged is at or below cost, and in no event to result in a profit, and that it is expected that some persons unable to pay the full rental will be assisted by subventions from corporate funds."

{¶ 8} See also *Cogswell Hall, Inc. v. Kinney* (1987), 30 Ohio St.3d 43, 44, 30 OBR 85, 506 N.E.2d 209 (real property exemption denied because the " 'furnishing of low-cost housing at or below market prices, where residents pay a part or all of their rental costs, is not, in and of itself, an exclusive use of property for charitable purposes' "), quoting *Natl. Church Residences v. Lindley* (1985), 18 Ohio St.3d 53, 55, 18 OBR 87, 479 N.E.2d 870 (same pronouncement in connection with denying a sales-tax exemption that would apply to purchases made by "organizations operated exclusively for charitable purposes").

{¶ 9} This principle reflects the consistent and longstanding doctrine that a *distinctly residential use* of real property defeats a claim of charitable exemption, even where attendant circumstances indicate the existence of

charitable motives. See also *W. Res. Academy v. Bd. of Tax Appeals* (1950), 153 Ohio St. 133, 41 O.O. 192, 91 N.E.2d 497 (houses supplied as residences for faculty members of preparatory school held not exempt); *Doctors Hosp. v. Bd. of Tax Appeals* (1962), 173 Ohio St. 283, 19 O.O.2d 154, 181 N.E.2d 702 (property adjacent to and owned by hospital that was used as residences by married interns held not exempt); *Toledo Business & Professional Women's Retirement Living, Inc. v. Bd. of Tax Appeals* (1971), 27 Ohio St.2d 255, 56 O.O.2d 153, 272 N.E.2d 359; *Quaker Apts. of Wilmington, Inc. v. Kosydar* (1974), 38 Ohio St.2d 20, 67 O.O.2d 36, 309 N.E.2d 863.

*NBC's claim under R.C. 5709.121 is jurisdictionally barred*

*because NBC did not raise it in the notice of appeal to the BTA*

{¶ 10} NBC's first proposition of law advances a claim under the expanded scope of charitable exemption pursuant to R.C. 5709.121. The BTA held that this argument was barred because NBC "did not specify R.C. 5709.121 in its notice of appeal [to the BTA] or in its application for exemption." *NBC-USA Hous., Inc.–Five*, BTA No. 2006-N-1492, at 5, fn. 1. We agree with the BTA that NBC did not specify as error the commissioner's failure to exempt the property under R.C. 5709.121, with the result that the claim under that section is jurisdictionally barred.

{¶ 11} In *Brown v. Levin*, 119 Ohio St.3d 335, 2008-Ohio-4081, 894 N.E.2d 35, we noted that even where the taxpayer does specify one or more errors in its notice of appeal to the BTA, "the BTA lacks jurisdiction to grant relief from a final determination based on other alleged errors that were not sufficiently specified in the notice of appeal." Id. at ¶ 17. Moreover, the "specification requirement is stringent," calling for any contention to be stated "in full and explicit terms" in order to confer jurisdiction. Id. at ¶ 18. In the present case, NBC's notice of appeal to the BTA sets forth six assignments of error, three that cite R.C. 5709.12 or 5709.12(B), but none that cite R.C. 5709.121. Nor do any of

the assignments otherwise assert an entitlement to exemption based on the status of the claimant as a charitable institution under R.C. 5709.121. Accordingly, although the notice of appeal specifies a claim of error directly under R.C. 5709.12(B), it does not raise a claim of error under 5709.121.

{¶ 12} When a taxpayer has not specified error in the notice of appeal to the BTA, we have no jurisdiction on appeal to grant relief based on that argument. *Newman v. Levin*, 120 Ohio St.3d 127, 2008-Ohio-5202, 896 N.E.2d 995, ¶ 27. Accordingly, we cannot consider this particular claim.

*NBC's claims under R.C. 5709.12(B) have no merit*

{¶ 13} As for claiming exemption directly under R.C. 5709.12(B), NBC attempts to bring its case outside the rule of *Philada Home Fund* through three main arguments. First, NBC argues that it provides its tenants with services over and above the rental of apartments. Second, NBC argues that it "operates the subject property as part of its religious mission to help the needy and the community in general." Third, NBC argues that the existence of "public policies" favoring its activities entitles it to a charitable exemption. None of these circumstances, however, permit NBC to escape the rule of *Philada Home Fund*.[2]

{¶ 14} First, we have rejected the existence of a *judicial* "services exception" to that rule. In a sequence of two cases, we first established such an exception and then determined that it had been preempted by legislative action. In *Carmelite Sisters, St. Rita's Home v. Bur. of Unemp. Comp. Bd. of Review* (1969), 18 Ohio St.2d 41, 47 O.O.2d 159, 247 N.E.2d 477, we addressed the issue whether the doctrine of *Philada Home Fund* prohibited a charitable exemption

---

2. NBC's third proposition of law asserts that the BTA erred by not accepting at face value some of its witness's testimony regarding the ownership interest and the involvement of the local church in the housing project. To the extent that there is any error, however, the error would be inconsequential and harmless because, as the BTA also correctly stated, proof of church ownership of NBC and involvement in predevelopment costs "would not disprove that appellant is used primarily for federally subsidized housing purposes," a use of property that does not qualify as charitable under *Philada Home Fund. NBC-USA Hous., Inc.–Five v. Wilkins* (Apr, 21, 2009), BTA No. 2006-N-1492, at 11.

from unemployment-compensation taxes. We determined that the provision of on-call physician and nursing services meant that the home could qualify for charitable exemption. Id. at 44-45.

{¶ 15} Later we addressed a similar claim for exemption of real property. *Natl. Church Residences of Chillicothe v. Lindley* (1985), 18 Ohio St.3d 53, 57, 18 OBR 87, 479 N.E.2d 870. In that case we held that a legislative amendment precluded the judicially recognized services exception because, as amended, the statutes explicitly provided a charitable-use exemption for "homes for the aged" pursuant to a statutory definition. That enactment precluded the judicially recognized services exception in *Carmelite Sisters* because henceforth only those taxpayers that satisfied the statutory definition of "home for the aged" could qualify. Id., citing *Toledo Business & Professional Women's Retirement Living*, 27 Ohio St.2d 255, 56 O.O.2d 153, 272 N.E.2d 359.

{¶ 16} Under *Natl. Church Residences* and *Toledo Business & Professional Women's Retirement Living*, the charitable-use exemption requires a residential facility to qualify under the definition of "home for the aged" pursuant to R.C. 5701.13 – or not qualify at all.[3] Since NBC does not and cannot claim that it satisfies the criteria for a "home for the aged" as defined at R.C. 5701.13, its claim of charitable-use exemption must fail when considered directly under R.C. 5709.12(B).

{¶ 17} Second, the status of NBC as carrying out a religious mission does not by itself entitle it to a charitable exemption. R.C. 5709.12(B) exempts from taxation "[r]eal and tangible personal property belonging to institutions that is used exclusively for charitable purposes." Under this provision we have emphasized that the entitlement of a particular parcel to exemption depends on the use of the property, not the nature of the institution. *First Baptist Church of*

---

3. As noted, R.C. 5701.13 defines "home for the aged" as certain facilities such as nursing homes that are licensed or are provided only for members eligible by reason of service to an institution.

*Milford, Inc. v. Wilkins*, 110 Ohio St.3d 496, 2006-Ohio-4966, 854 N.E.2d 494, ¶ 15, citing *White Cross Hosp. Assn. v. Bd. of Tax Appeals* (1974), 38 Ohio St.2d 199, 203, 67 O.O.2d 224, 311 N.E.2d 862 (Stern, J., concurring); *True Christianity Evangelism v. Zaino* (2001), 91 Ohio St.3d 117, 118, 742 N.E.2d 638 (under R.C. 5709.12, "whether the institution is religious or charitable is not a relevant factor" because the relevant factor is "whether the institution is using the property exclusively for charitable purposes"); *Church of God in N. Ohio v. Levin*, 124 Ohio St.3d 36, 2009-Ohio-5939, 918 N.E.2d 981, ¶ 32 (religious institution may obtain charitable exemption for real property that is used exclusively for charitable purposes).

{¶ 18} NBC asserts that the religious character of its activities confers a spiritual benefit upon the tenants, particularly through the Bible study and evangelistic communication with them. See *True Christianity*, 91 Ohio St.3d 117, 742 N.E.2d 638. But in determining whether property is "used exclusively for charitable purposes," we look to the property's "*primary* use, not secondary or ancillary activities." (Emphasis sic.) *Church of God*, ¶ 22. As a result, *True Christianity* does not control in a case like this one, where the dissemination of religious messages is secondary to the property's primary use: the provision of low-cost residential apartments to the tenants.

{¶ 19} Third, contrary to NBC's suggestion, the existence of a public policy favoring an activity does not establish that activity as being charitable for purposes of exempting property from taxation. In this regard, NBC notes that we have acknowledged one federal housing-subsidy program as " 'expressing the judgment of Congress concerning desirable public policy.' " *Woda Ivy Glen Ltd. Partnership v. Fayette Cty. Bd. of Revision*, 121 Ohio St.3d 175, 2009-Ohio-762, 902 N.E.2d 984, ¶ 24, quoting *Westside Mothers v. Haveman* (C.A.6, 2002), 289 F.3d 852, 858, quoting *Bennett v. Kentucky Dept. of Edn.* (1985), 470 U.S. 656, 669, 105 S.Ct. 1544, 84 L.Ed.2d 590. Assuming that the same can be said of the

federal subsidies at issue in this case, NBC asserts that its "use of the subject property is inherently charitable since it coincides with Congress's expressed public policy goals." In essence, NBC argues that nonprofit use plus conformity with congressional public policy equals charitable use.

{¶ 20} But tying charitable use so tightly to Congress's policy goals is wrong because Congress does not define the scope of charitable use under Ohio law.[4] Because we have always defined charitable use of property to exclude a primarily residential use, the existence of federal subsidies is not dispositive of NBC's exemption claim. See *Farm Credit Servs. of Mid-America v. Zaino* (2001), 91 Ohio St.3d 564, 568, 747 N.E.2d 814 (no exemption available where federal law recognized no immunity); *Vought Industries, Inc. v. Tracy* (1995), 72 Ohio St.3d 261, 266, 648 N.E.2d 1364 (because the General Assembly "has the power to grant a tax exemption and has chosen not to clearly express an exemption for corporations reorganizing under Chapter 11," the court had a duty to apply the plain meaning of the exemption statute and deny the exemption).

{¶ 21} Nor does NBC's citation of Section 16, Article VIII of the Ohio Constitution fare any better. That provision authorizes the General Assembly to pass laws assisting with the provision of housing to the citizenry without interference from specified constitutional limitations. Nothing about that grant of authority conflicts with the well-settled exclusion of residential use from the charitable-use exemption or otherwise mandates that real property be exempted based on the provision of low-income housing.

---

4. The Columbus City School District Board of Education states that the United States Congress "provided that all HUD 202 projects would be subject to real property taxation by the states and local subdivisions." In support, the school board cites one statute and one administrative regulation. Those provisions authorize the Housing and Urban Development Department to make rental assistance payments to defray property taxes, among other costs. Section. 1701q(c)(2), Title 12, U.S.Code; Section 891.105(5), Title 24, C.F.R. Neither the statute nor the administrative rule purports to control whether or not Ohio can impose property taxes on subsidized projects. It follows that federal law does not control the availability of a charitable-use exemption for the property.

**Conclusion**

{¶ 22} For the foregoing reasons, the tax commissioner correctly denied NBC's application for exemption, and the BTA acted reasonably and lawfully when it affirmed that denial. We therefore affirm the decision of the BTA.

Decision affirmed.

MOYER, C.J.,[5] and PFEIFER, O'CONNOR, O'DONNELL, and CUPP, JJ., concur.

LUNDBERG STRATTON, J., concurs separately.

_____

**LUNDBERG STRATTON, J., concurring.**

{¶ 23} Although I believe that providing subsidized housing for the underprivileged is a charitable use that should be exempt from taxation, the court is bound by a long line of cases that hold otherwise. Therefore, I reluctantly concur.

{¶ 24} Some property used for subsidized housing for the elderly is exempt from taxation under R.C. 5709.12(B) and 5701.13 as being used for a charitable purpose. *Christian Benevolent Assn. of Greater Cincinnati, Inc. v. Limbach* (1994), 69 Ohio St.3d 296, 631 N.E.2d 1034. However, property used for subsidized housing for the underprivileged is not exempt from taxation because "[a] long line of Ohio cases hold that property partly or incidentally used for private residence is nonexempt as not used exclusively for charitable purposes." *Philada Home Fund v. Bd. of Tax Appeals* (1966), 5 Ohio St.2d 135, 137, 34 O.O.2d 262, 214 N.E.2d 431.

{¶ 25} It is difficult to reconcile why using property to provide subsidized housing for the elderly is a charitable use of property, while using property to provide subsidized housing for the underprivileged is not. Subsidized housing for

_____

5. The late Chief Justice Thomas J. Moyer participated in the deliberations in, and the final resolution of, this case prior to his death.

both groups would seem to fall within the definition of a charitable use, which this court has defined as "the attempt in good faith, spiritually, physically, intellectually, socially and economically to advance and benefit mankind in general, or those in need of advancement and benefit in particular, without regard to their ability to supply that need from other sources, and without hope or expectation, if not with positive abnegation, of gain or profit by the donor or by the instrumentality of the charity." *Planned Parenthood Assn. of Columbus, Ohio v. Tax Commr.* (1966), 5 Ohio St.2d 117, 34 O.O.2d 251, 214 N.E.2d 222, paragraph one of the syllabus. However, the authority to create tax exemptions " 'is lodged exclusively in the General Assembly.' " *Christian Benevolent Assn. of Greater Cincinnati, Inc.*, 69 Ohio St.3d at 299, 631 N.E.2d 1034, quoting *Toledo Business & Professional Women's Retirement Living, Inc. v. Bd. of Tax Appeals* (1971), 27 Ohio St.2d 255, 258, 56 O.O.2d 153, 272 N.E.2d 359. Therefore, I would invite the General Assembly to examine this inconsistency and consider whether providing housing for the poor should also be considered to be a charitable use of property that is exempt from taxation.

{¶ 26} Accordingly, because the court is bound by precedent to hold that using property to provide subsidized housing for the underprivileged is not a charitable use that is exempt from taxation, I reluctantly concur.

_____

Karen H. Bauernschmidt Co., L.P.A., Karen H. Bauernschmidt, and Charles J. Bauernschmidt, for appellant.

Richard Cordray, Attorney General, and Sophia Hussain and Lawrence D. Pratt, Assistant Attorneys General, for appellee Tax Commissioner Richard A. Levin.

Rich & Gillis Law Group, L.L.C., and Mark H. Gillis, for appellee Columbus City School District Board of Education.

_____