OPINIONS OF THE SUPREME COURT OF OHIO
     The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
     Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
     NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.

Christian Benevolent Association of Greater Cincinnati, Inc.,
Appellant, v. Limbach, Tax Commr., Appellee.
Brentwood Life Care Center, d.b.a. Brentwood Health Care
Center, Appellant, v. Limbach, Tax Commr., et al., Appellees.
[Cite as Christian Benevolent Assn. of Greater Cincinnati, Inc.
v. Limbach (1994),        Ohio St. 3d        .]
Taxation -- Nursing home or rest home not entitled to real
     property tax exemption under R.C. 5709.12(B) and 5701.13,
     when.
In order to be entitled to a real property tax exemption for
     a nursing home or rest home under R.C. 5709.12(B) and
     5701.13, an applicant for the exemption must have received
     a license to operate the facility by the tax lien date of
     the year for which exemption is sought.
     (Nos. 93-689 and 93-696 -- Submitted March 22, 1994 --
Decided May 18, 1994.)
     Appeal from the Board of Tax Appeals, Nos. 89-H-850 and
90-G-29.
     Appellants, Christian Benevolent Association of Greater
Cincinnati, Inc. ("CBA") and Brentwood Life Care Center
("Brentwood"), each appeal a decision by the Tax Commissioner
denying a real estate tax exemption for its home for the aged.
We have consolidated these cases for review.
                    Case No. 93-689
     CBA, which operates an independent living complex for the
elderly, applied to the Ohio Department of Health for a
certificate of need to build a nursing home.  CBA was granted
this certificate on October 1, 1987, approving seventy nursing
home beds, fifty rest home beds, fifty-nine congregate
(assisted living) apartments, and one hundred two cluster
(independent living) homes.  Exemption was sought only for that
part of the property on which the nursing home and rest home
would be built.  CBA, however, did not obtain a license to
operate this proposed facility in 1988.  It obtained financing
for constructing this facility and began construction after
1988.
     Pursuant to R.C. 5709.12(B) and 5701.13, CBA applied to
the Tax Commissioner for an exemption from real property

taxation on October 31, 1988, seeking to exempt the property as of January 1, 1988.  CBA claimed that the substantial preparatory steps it had taken, particularly its receipt of a certificate of need in 1987, sufficiently demonstrated its intention to build a nursing home, thereby entitling it to an exemption for 1988.  The Tax Commissioner, however, denied the exemption because CBA had not received a license as of the tax lien date, January 1, 1988.  On appeal, the Board of Tax Appeals ("BTA") affirmed.

Case No. 93-696

Brentwood applied for and received a certificate of need to construct a nursing home and rest home on October 16, 1985. Construction was ninety-six percent complete by December 31, 1988.  Brentwood received a certificate of occupancy for the facility on February 3, 1989. It then received a license to operate a rest home on March 2, 1989 and a license to operate a nursing home on March 21, 1989.  Brentwood admitted its first residents two days later on March 23, 1989.

Like CBA, Brentwood applied for a tax exemption under R.C. 5709.12(B) and 5701.13, for tax year 1989.  The Tax Commissioner denied the application and, on appeal, the BTA affirmed.  The BTA found, as it had with CBA, that Brentwood failed to receive a license to operate a home for the aging as of tax lien date, January 1, 1989.

These causes are now before this court upon an appeal as of right.


Taft, Stettinius & Hollister, Stephen M. Nechemias and Ronald C. Christian, for appellant in case No. 93-689.

Calfee, Halter & Griswold, Mitchell G. Blair and John P. Susany, for appellant in case No. 93-696.

Lee I. Fisher, Attorney General, and Janyce C. Katz, Assistant Attorney General, for appellee Tax Commissioner.

Armstrong, Mitchell & Damiani, Bruce A. Zaccagnini and Deborah J. Papushak, for appellee Nordonia Hills Board of Education.


Wright, J.    The Tax Commissioner may not exempt property from taxation unless the exempt use began by the tax lien date of the year for which exemption is sought.  R.C. 5713.08(B); Ursuline Academy of Cleveland v. Bd. of Tax Appeals (1943), 141 Ohio St. 563, 567, 26 O.O. 152, 154, 49 N.E.2d 674, 676.

CBA and Brentwood contest the BTA's interpretation of the exemption of property found in R.C. 5709.12 and 5701.13.  R.C. 5709.12(B) provides:

"*** All property owned and used by a nonprofit organization exclusively for a home for the aged, as defined in section 5701.13 of the Revised Code, also shall be exempt from taxation."

At the time in question, R.C. 5701.13 provided in part:

"(A) As used in this section:

"(1) 'Nursing home' means a nursing home or home for the aging, as those terms are defined in section 3721.01 of the Revised Code, that is issued a license pursuant to section 3721.02 of the Revised Code.

"(2) 'Rest home' means a rest home, as defined in section 3721.01 of the Revised Code, that is issued a license pursuant

to section 3721.02 of the Revised Code.

"***

"(B) As used in Title LVII of the Revised Code *** a 'home for the aged' means a place of residence for aged and infirm persons that is either a nursing home [or] rest home ***." (Emphasis added.) 142 Ohio Laws, Part I, 72.

According to Ohio Adm. Code 3701-17-03, which sets forth licensing procedures for nursing and rest homes, an applicant for a license must complete an application for a license and submit it to the Ohio Director of Health not less than sixty days before the proposed opening of the home. According to R.C. 3721.07, the director must inspect the home before he issues a license. Consequently, construction must be at or near completion before an applicant can receive a license.

CBA argues that, by purchasing the land and obtaining a certificate of need, it has demonstrated its intention to use the property as a home for the aged and, hence, is exempt under the prospective use rule. Brentwood contends that it has manifested its intention to occupy the facility as a home for the aged by virtually completing the home by the tax lien date and, within three months of such date, actually occupying the facility for the intended exempt use. The commissioner responds that a certificate of need is not tantamount to a license to operate and that the prospective use rule does not apply in these situations.

In several cases, we have held that an applicant could obtain a tax exemption for its property if the applicant intended to use the property in an exempt manner within a reasonable time and provided tangible evidence that the property would be so used. Ohio Operating Engrs. Apprenticeship Fund v. Kinney (1980), 61 Ohio St.2d 359, 362-363, 15 O.O.3d 440, 442-443, 402 N.E.2d 511, 514 (vacant land to be used for public education); Holy Trinity Protestant Episcopal Church of Kenwood v. Bowers (1961), 172 Ohio St. 103, 15 O.O.2d 173, 173 N.E.2d 682 (intent to erect church on vacant land); Lake Cty. Bd. of Commrs. v. Supanick (1972), 32 Ohio St.2d 45, 61 O.O.2d 279, 289 N.E.2d 902 (intent to construct hospital on undeveloped land). The exemptions in these cases, however, did not involve the application of a statute requiring that a license to operate be issued before a tax exemption can be granted. At issue today is a statute that contains specific criteria, including the issuance of a license to operate, with which an applicant must comply in order to obtain a tax exemption. As pointed out by counsel for the Tax Commissioner, the license requirement of R.C. 5701.13, by its very nature, precludes an application of the prospective use test.

Statutes granting tax exemptions must be strictly applied. Ohio Operating Engrs., supra, 61 Ohio St.2d at 360, 15 O.O.3d at 441, 402 N.E.2d at 512. We applied the home-for-aged exemption in Toledo Business & Professional Women's Retirement Living, Inc. v. Bd. of Tax Appeals (1971), 27 Ohio St.2d 255, 56 O.O.2d 153, 272 N.E.2d 359. In that case we stated:

"*** By [the] adoption [of former analogous R.C. 5701.12 and 5709.13], the General Assembly has marked for exemption from taxation 'all property owned and used by a nonprofit organization exclusively for a home for the aged, as defined

in' R.C. 5701.13, which established the criteria for a 'home for the aged.'

"Necessarily, that power is lodged exclusively in the General Assembly, and once it has chosen a specific subject for tax exemption, and defined the criteria, the function of the executive and judicial branches is limited to applying those criteria to a particular case, or to interpreting them if necessary. Any other interpretation of Section 2 of Article X of our Constitution would constitute [a] usurpation of the power thereby granted in favor of, and a co-sharing of that power by, those other branches." Id. at 258, 56 O.O.2d at 154, 272 N.E.2d at 361-362.

Thus, the prospective use rule cannot apply to the exemption of real property from taxation under R.C. 5709.12(B) and 5701.13 because these statutes specifically identify the criteria necessary for exemption, one criterion being the issuance of a license to the applicant for exemption. Consequently, in order to be entitled to a real property tax exemption for a nursing home or rest home under R.C. 5709.12(B) and 5701.13, an applicant for the exemption must have received a license to operate the facility by the tax lien date of the year for which exemption is sought. Here, neither appellant had received a license on the tax lien date of the year for which each appellant applied for exemption. Accordingly, neither CBA's property nor Brentwood's property is exempt for the respective years at issue.

As for Brentwood's equal protection argument, it failed to mention this claim in its notice of appeal to the BTA or this court. Consequently, we have no jurisdiction to decide it. Cleveland Gear Co. v. Limbach (1988), 35 Ohio St. 3d 229, 520 N.E. 2d 188.

Accordingly, we affirm the decision of the BTA.

Decision affirmed.

Moyer, C.J., A.W. Sweeney, Douglas and Resnick, JJ., concur.

F.E. Sweeney and Pfeifer, JJ., dissent.

Francis E. Sweeney, Sr., J., dissenting. I respectfully dissent from the majority's finding that the prospective use rule does not apply to exempt charitable use property from taxation where the property is acquired and prepared for use as a home for the aged. R.C. 5709.12(B) provides an exemption from property tax for certain property used for charitable purposes, including "homes for the aged," as defined in R.C. 5701.13. The language of R.C. 5701.13(A), which is set forth by the majority, defines a "home for the aged" as a place of residence for aged and infirm persons that is licensed by the Ohio Director of Health under R.C. 3721.02 as either a nursing home or a rest home. While it is admitted that the definition of a home for the aged under R.C. 5701.13(A) provides that the nursing home or rest home obtain a license upon completion, nothing in the statute supports the majority's conclusion that this technical requirement should be interpreted as an intent to deny the application of the prospective use doctrine prior to the completion of the nursing home or rest home. The prospective use rule recognizes that a taxpayer will not be able to complete a plan to convert property to an exempt use immediately after deciding upon the use.

The critical analysis under the prospective use rule is not whether tax-exempt status has been finalized, but instead whether the taxpayer has taken substantial steps to prepare the property for tax-exempt status. Thus, the prospective use rule can still be applied in the present case, as the focus should be on the fact that the properties have been acquired and prepared for tax-exempt use, i.e., licensed nursing or rest homes, and not on whether tax-exempt status has been reached.

This court set forth the prospective use doctrine in Carney v. Cleveland City School Dist. Pub. Library (1959), 169 Ohio St. 65, 8 O.O.2d 33, 157 N.E.2d 311, in which we upheld the exemption of property for future use as a public library under the public use exemption of R.C. 5709.08. This exemption was granted even though the property was not yet being used for the exempt purpose. We held the following: "Where an entity, which under the law is entitled to have its property exempted from taxation, acquires real property with the intention of devoting it to a use exempting it from taxation, such property is entitled to be exempted from taxation, * * * even though actual physical use of the property for the exempt purpose has not yet begun." Id. at paragraph one of the syllabus. The prospective use doctrine has been consistently applied to property to be used for charitable purposes, including public libraries, schools, hospitals, and places of public worship. See Ohio Operating Engrs. Apprenticeship Fund v. Kinney (1980), 61 Ohio St.2d 359, 15 O.O.3d 440, 402 N.E.2d 511; Lake Cty. Bd. of Commrs. v. Supanick (1972), 32 Ohio St.2d 45, 61 O.O.2d 279, 289 N.E.2d 902; Holy Trinity Protestant Episcopal Church of Kenwood v. Bowers (1961), 172 Ohio St. 103, 15 O.O.2d 173, 173 N.E.2d 682.

Based on the foregoing, I must disagree with the majority's conclusion that the statute's requirement of a license prohibits the application of the prospective use rule. This is an erroneous interpretation of the statute which limits the prospective use rule in a manner contrary to the purpose behind the rule and contrary to previous interpretations of the rule by this court. No real distinction exists between a home for the aged, which requires a license upon completion, and the other types of charitable use property to which we have applied the prospective use rule. In both, where the taxpayer has taken steps to prepare the property for an exempt use, we should apply the prospective use rule to provide an exemption from property tax prior to the actual commencement of the use.

In the present case, appellant Christian Benevolent Association, by purchasing the land and obtaining a certificate of need, has demonstrated its intention to use the property as a home for the aged. Likewise, appellant Brentwood has manifested its intention to occupy the facility as a home for the aged by not only purchasing the land and obtaining a certificate of need, but by virtually completing the home by the tax lien date and, within three months thereafter, actually occupying the facility for the intended exempt use. The acquisition of a certificate of need is tantamount to licensure until a facility is completed. Thus, for purposes of applying the prospective use rule, the critical step which was taken by the taxpayer was the issuance of the certificate of need. Based on these facts, the prospective use doctrine should be

applied to provide an exemption to the appellants' respective properties, as the appellants have demonstrated that the properties have been acquired and prepared for use as exempt property, i.e., licensed nursing homes.

Accordingly, I would reverse the decisions of the Board of Tax Appeals.

Pfeifer, J., concurs in the foregoing dissenting opinion.