[This opinion has been published in *Ohio Official Reports* at 78 Ohio St.3d 124.]

WEST SIDE DEUTSCHER FRAUEN VEREIN, D.B.A. ALTENHEIM, APPELLANT, *v.* TRACY, TAX COMMR., APPELLEE.

[Cite as *W. Side Deutscher Frauen Verein v. Tracy*, 1997-Ohio-228.]

*Taxation—New addition to existing nursing home facility not entitled to real property tax exemption under R.C. 5709.12(B), when.*

(No. 95-2577—Submitted January 8, 1997—Decided April 2, 1997.)

APPEAL from the Board of Tax Appeals, No. 94-K-702.

———————————

{¶ 1} In March 1980, West Side Deutscher Frauen Verein, a nonprofit corporation, was issued a license by the Ohio Department of Health ("ODH") to operate a one-hundred-bed nursing home facility in Strongsville, Ohio. The nursing home facility is known as "Altenheim." For tax year 1988, West Side Deutscher Frauen Verein, d.b.a. Altenheim, appellant, was granted a tax exemption pursuant to R.C. 5709.12 for the parcel of property upon which the nursing home facility was located, *i.e.*, permanent parcel number 397-01-007. In September 1990, parcel number 397-01-007 was consolidated with four other adjacent parcels owned by appellant, and the consolidated parcels were collectively renumbered as permanent parcel number 397-01-006.[1] Apparently, appellant had requested the lot consolidation in anticipation of expanding its nursing home facility to include space for fifty additional beds. The creation of consolidated permanent parcel number 397-01-006 provided appellant with a total of approximately 19.6 acres upon which to operate an expanded facility. Sometime prior to October 1990, appellant apparently obtained a certificate of need from ODH authorizing appellant to

———————————

1. Title to the four other adjacent parcels had been acquired by appellant during the span of approximately two years between August 1984 and October 1986.

increase the number of its nursing home beds from one hundred to one hundred and thirty-five and to add fifteen rest home beds.

{¶ 2} In October 1990, appellant commenced a project to renovate the existing nursing home facility and to construct a new addition to the existing facility. Apparently, most (but not all) of the new addition was built within the boundaries of what had previously been permanent parcel number 397-01-007, *i.e.*, the property that had been exempted from taxation for tax year 1988. The new construction added space for, among other things, physical therapy, dining areas, thirty-five additional nursing home beds, and fifteen rest home beds. The new addition was first occupied by appellant's residents in December 1991 when ODH authorized some of appellant's one hundred licensed beds to be relocated to the newly constructed space while renovations continued in the older section of the facility. Prior to July 1992, the total number of residents at Altenheim never exceeded the total number of nursing home beds appellant had been authorized to maintain under its 1980 license. In July 1992, appellant was issued licenses by ODH to operate the expanded facility. Specifically, in July 1992, appellant was issued licenses to operate a one-hundred-thirty-five-bed nursing home and a fifteen-bed rest home.

{¶ 3} Thereafter, appellant filed an application with the Tax Commissioner, appellee, seeking a real property tax exemption under R.C. 5709.12(B) for tax year 1992, and a tax remission for 1991, for all of permanent parcel number 397-01-006, except for portions of the property occupied by certain personal residences. On June 13, 1994, an attorney examiner for the Ohio Department of Taxation, Division of Tax Equalization, issued a recommendation that the property be "split listed" pursuant to R.C. 5713.04. The examiner stated that because the new addition to the Altenheim facility had not been licensed by ODH until July 1992, appellant was not entitled to an exemption for that portion of the property until the tax lien date of the year following licensure, *i.e.*, January 1, 1993. However, the examiner

recommended that appellant be granted an exemption for the "original nursing home and 5.63 acres of land," which had previously been listed as exempt for tax year 1988. The examiner also concluded that the personal residence of Altenheim's maintenance director qualified for an exemption for tax year 1992 and a remission for tax year 1991. In an order and journal entry dated July 15, 1994, the Tax Commissioner adopted the recommendations of the attorney examiner, stating:

"The applicant is requesting tax exemption for an addition to its nursing home. As explained [in the attorney examiner's recommendation], this property cannot qualify for exemption until it is licensed. The applicant contends that its possession of a license for the previously existing building satisfies the licensing requirement. However, a nursing home license is specific to a given location and to the number of beds that location is authorized to maintain. A tax exemption is also specific to the given location that meets all the requirements for exemption. In this case, the Ohio Department of Health did not issue a license to include the new addition and an additional fifty beds until July 1992. Therefore, this newly licensed addition does not qualify for exemption until the following tax lien day, January 1, 1993.

"* * * Pursuant to R.C. 5713.04, the Tax Commissioner orders that the property be listed as follows:

"Property exempt from taxation: the original nursing home and 5.63 acres of land previously listed as exempt [in tax year 1988], the maintenance director's residence and attached land at 18681 Shurmer Road, and the entrance way at the northeast corner of the property; the additional building licensed in 1992 and attached land extending to the tree line separating the facility grounds from the private residences are exempt for tax year 1993. The Tax Commissioner orders that taxes, penalties, and interest charged against and paid for this part of the property for these tax years be refunded in the manner provided by R.C. 5715.22.

"Property to remain on tax list: the four private residences and attached land at 18673, 18727 and 18729, and 18821 Shurmer Road; the facility addition listed as exempt for 1993 remains taxable for tax years 1991 and 1992. The Tax Commissioner orders that penalties charged against this part of the property for these tax years be remitted."

{¶ 4} Appellant appealed to the Board of Tax Appeals ("BTA"), claiming that the commissioner had erred in determining that appellant's facility addition and the attached land extending to the tree line separating the facility grounds from the private residences were taxable for tax years 1991 and 1992. On appeal, the BTA affirmed the order of the commissioner. The cause is now before this court upon an appeal as of right.

_____

*Wegman, Hessler, Vanderburg & O'Toole* and *Jeffrey W. Krueger*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Janyce C. Katz*, Assistant Attorney General, for appellee.

_____

**DOUGLAS, J.**

{¶ 5} The issue for our consideration is whether appellant's building addition which was not licensed by ODH until July 1992 qualifies for a tax exemption under R.C. 5709.12(B) for tax years 1991 and 1992. For the reasons that follow, we find that the decision of the BTA upholding the determination of the Tax Commissioner that appellant's facility addition and attached land were not entitled to the claimed exemption is neither unlawful nor unreasonable and, accordingly, we affirm the decision of the BTA.

{¶ 6} R.C. 5709.12(B) provides, in part:

"All property owned and used by a nonprofit organization exclusively for a home for the aged, as defined in section 5701.13 of the Revised Code, also shall be exempt from taxation."

{¶ 7} At the time in question, R.C. 5701.13 provided in part:

"(A)  As used in this section:

"(1)  'Nursing home' means a nursing home or a home for the aging, as those terms are defined in section 3721.01 of the Revised Code, *that is issued a license pursuant to section 3721.02 of the Revised Code*.

"(2)  'Rest home' means a rest home, as defined in section 3721.01 of the Revised Code, *that is issued a license pursuant to section 3721.02 of the Revised Code*.

"* * *

"(B)  As used in Title LVII [57] of the Revised Code * * * a 'home for the aged' means a place of residence for aged and infirm persons that is either a nursing home [or] rest home * * *."  (Emphasis added.)  143 Ohio Laws, Part III, 3840.

{¶ 8} Thus, at the time in question, R.C. 5701.13 contained specific criteria necessary for a tax exemption under R.C. 5709.12(B), including the requirement that the applicant for exemption had been issued a license to operate the nursing or rest home facility.  In *Christian Benevolent Assn. of Greater Cincinnati, Inc. v. Limbach* (1994), 69 Ohio St.3d 296, 631 N.E.2d 1034, we considered R.C. 5709.12(B) and a former version of R.C. 5701.13, which is virtually identical to the version at issue here, and held that "[i]n order to be entitled to a real property tax exemption for a nursing home or rest home under R.C. 5709.12(B) and 5701.13, an applicant for the exemption must have received a license to operate the facility by the tax lien date of the year for which exemption is sought."  *Id*. at syllabus.  R.C. 323.11 provides that the lien of the state for taxes "shall attach to all real property subject to such taxes on the first day of January, annually * * *[.]"

**{¶ 9}** In the case at bar, appellant constructed its new facility addition for the purpose of increasing bed space and, particularly, to add thirty-five additional nursing home beds and fifteen rest home beds. The facility addition was not licensed for its intended purpose until July 1992. Accordingly, appellant was not entitled to a tax exemption for its new facility addition and attached land for tax years 1991 and 1992, since the facility addition was not licensed as of the applicable tax lien date for either tax year.

**{¶ 10}** Nevertheless, appellant claims a right to a tax exemption for the facility addition and attached land for tax year 1992, as well as a tax remission for 1991, on the basis that appellant possessed a valid license to operate a nursing home facility throughout the 1990-1992 construction and renovation project. Specifically, appellant maintains that its 1980 license to operate the original one-hundred-bed nursing home facility was sufficient to include the expanded facility for the tax years in question. In this regard, appellant points out that although the facility addition was first occupied by appellant's residents in December 1991, the total number of residents at Altenheim never exceeded the total number of licensed beds appellant had been authorized to maintain under the 1980 license. Thus, appellant urges that the licensing requirement of R.C. 5701.13 was satisfied as of the tax lien date for 1991 and 1992 because appellant was never without a valid license to operate a home for the aged.

**{¶ 11}** Appellant raised a similar argument before the BTA. The BTA rejected appellant's argument, stating:

"Appellant maintains that the present case is factually distinguishable from [*Christian Benevolent Assn*., 69 Ohio St.3d 296, 631 N.E.2d 1034]. It insists that despite the fact that its additional building was not licensed until July 1992, this facility is exempt because appellant has continuously been licensed to operate a nursing home or home for the aged since March 1980. * * *

6

"In considering whether the subject property is exempt under R.C. 5709.12 and R.C. 5701.13, appellant would have this Board focus upon *its* licensure as an entity capable of operating a nursing home facility. The Tax Commissioner, on the other hand, suggests that the appropriate focus is upon the *property* to which the license issued by ODH applies. Since the question before this Board is whether the subject *real property* is exempt from taxation, we find the focus advocated by the Tax Commissioner to be that which was intended by the General Assembly.

"As support for our position, we first note that [former] R.C. 5701.13(B) states in part:

"'As used in Title LVII [57] of the Revised Code * * * a "home for the aged" means *a place* of residence for aged and infirm persons that is either a nursing home [or] rest home * * *.' (Emphasis added.)

"Moreover, in addition to requiring that an applicant satisfy certain requirements, R.C. 3721.02, as well as Ohio Adm. Code Chap. 3701-17., provide[s] for physical inspections of the facilities sought to be licensed to be made by the director of health and the appropriate fire official prior to the issuance of a license. It is therefore not appellant's license to operate nursing home facilities which controls the taxable status of the subject property. Instead, it is the issuance of a license by ODH regarding the property itself which satisfies the requirements for exemption imposed by R.C. 5709.12 and [former] R.C. 5701.13. While appellant would have this Board accept that the construction undertaken in this case was mere remodeling or renovation, the added facilities included space for physical therapy, department activities, resident dining areas and rooms, consisting of an additional thirty-five nursing beds and fifteen rest home beds. Due to this additional construction, appellant was required to, and ultimately did obtain, a license from ODH for the property at issue. Accordingly, we find no error in the Tax Commissioner's decision to split list the subject property for purposes of taxation in the manner reflected in his journal entry." (Emphasis *sic* and footnote omitted.)

{¶ 12} We agree with the BTA's resolution of this issue. The only license that existed as of the tax lien date for tax years 1991 and 1992 was appellant's 1980 license to operate the original one-hundred-bed nursing home facility. The 1980 license certainly did not include the new addition to appellant's facility which added space for, among other things, fifty additional beds.[2] Appellant did not receive licenses from ODH to operate the expanded facility until after the tax lien date for tax year 1992. Therefore, appellant was entitled to an exemption for tax year 1992 for that portion of the expanded facility that was licensed as of January 1, 1992, *i.e.*, the portion of the expanded facility occupied by the original nursing home. However, appellant was not entitled to an exemption for tax year 1992 for that portion of the expanded facility that was not licensed as of January 1, 1992, *i.e.*, the new addition. Accordingly, we find that the decision of the BTA upholding the commissioner's order to split list appellant's property in the manner reflected

---

2. Appellant relies heavily on Ohio Adm.Code 3701-17-03 to suggest that the "premises" Altenheim had been licensed to operate in 1980 essentially included all property currently occupied by its new facility addition. Ohio Adm.Code 3701-17-03(D) through (F) provide that:

"(D) The license to operate a nursing home shall be issued by the Director in accordance with Chapter 3721. of the Revised Code, and shall remain in effect until revoked by the Director or voided at the request of the applicant; provided, the annual renewal fee is paid during the month of January of each year.

"(E) A license to operate a nursing home is not assignable or transferable and *is valid only for the operator and premises named in the application*.

"(F) An operator who operates one or more nursing homes in more than one building shall obtain a separate license for each building; provided, however, where such buildings are on the same lot and constitute a single nursing home, such nursing home may be operated under a single license." (Emphasis added.)

Ohio Adm.Code 3701-17-03(E) clearly states that a license to operate a nursing home is valid only for the *premises* named in the application. The record in this case does not include appellant's application for either the 1980 or 1992 licenses. However, we note, in passing, that a plain and ordinary meaning of the word "premises" is "a specified piece or tract of land with the structures on it." Webster's Third New International Dictionary (1986) 1789. Common sense dictates that the description (if any) of appellant's premises in the 1980 application for licensure could not have included a description of the facility addition that was constructed by appellant between 1990 and 1992. Moreover, and in any event, we note that some of the land that is the subject of appellant's claimed exemption had not even been purchased by appellant until well after 1980.

in the commissioner's July 15, 1994 journal entry was neither unlawful nor unreasonable.

{¶ 13} Appellant also claims entitlement to a tax exemption for the facility addition and attached land for tax years 1991 and 1992 under the so-called prospective use rule. Appellant argues that "[a]pplication of the prospective use rule should not be precluded when considering an application for exemption under R.C. 5709.12(B) by an applicant that is already licensed to operate a home for the aged, as defined in section 5701.13 of the Revised Code, on the same lot as that for which exemption is sought." However, in *Christian Benevolent Assn*., 69 Ohio St.3d at 298-299, 631 N.E.2d at 1036-1037, we considered a version of R.C. 5701.13 which is virtually identical to the version at issue here, and found that the statute's licensing requirement precluded application of the prospective use rule:

"In several cases, we have held that an applicant could obtain a tax exemption for its property if the applicant intended to use the property in an exempt manner within a reasonable time and provided tangible evidence that the property would be so used. *Ohio Operating Engrs. Apprenticeship Fund v. Kinney* (1980), 61 Ohio St.2d 359, 362-363, 15 O.O.3d 440, 442-443, 402 N.E.2d 511, 514 (vacant land to be used for public education); *Holy Trinity Protestant Episcopal Church of Kenwood v. Bowers* (1961), 172 Ohio St. 103, 15 O.O.2d 173, 173 N.E.2d 682 (intent to erect church on vacant land); *Lake Cty. Bd. of Commrs. v. Supanick* (1972), 32 Ohio St.2d 45, 61 O.O.2d 279, 289 N.E.2d 902 (intent to construct hospital on undeveloped land). The exemptions in these cases, however, did not involve the application of a statute requiring that a license to operate be issued before a tax exemption can be granted. At issue today is a statute that contains *specific* criteria, including the issuance of a license to operate, with which an applicant must comply in order to obtain a tax exemption. As pointed out by counsel for the Tax Commissioner, the license requirement of R.C. 5701.13, by its very nature, precludes an application of the prospective use test.

"Statutes granting tax exemptions must be strictly applied. *Ohio Operating Engrs.*, *supra*, 61 Ohio St.2d at 360, 15 O.O.3d at 441, 402 N.E.2d at 512. We applied the home-for-aged exemption in *Toledo Business & Professional Women's Retirement Living, Inc. v. Bd. of Tax Appeals* (1971), 27 Ohio St.2d 255, 56 O.O.2d 153, 272 N.E.2d 359. In that case we stated:

"'* * * By [the] adoption [of former analogous R.C. 5701.12 and 5701.13], the General Assembly has marked for exemption from taxation "all property owned and used by a nonprofit organization exclusively for a home for the aged, as defined in" R.C. 5701.13, which established the criteria for a "home for the aged."

"'Necessarily, that power is lodged exclusively in the General Assembly, and once it has chosen a specific subject for tax exemption, and defined the criteria, the function of the executive and judicial branches is limited to applying those criteria to a particular case, or to interpreting them if necessary. * * *' *Id*. at 258, 56 O.O.2d at 154, 272 N.E.2d at 361-362.

"Thus, the prospective use rule cannot apply to the exemption of real property from taxation under R.C. 5709.12(B) and 5701.13 because these statutes specifically identify the criteria necessary for exemption, one criterion being the issuance of a license to the applicant for exemption. Consequently, in order to be entitled to a real property tax exemption for a nursing home or rest home under R.C. 5709.12(B) and 5701.13, an applicant for the exemption must have received a license to operate the facility by the tax lien date of the year for which exemption is sought." (Emphasis *sic*.)

{¶ 14} Accordingly, consistent with our recent pronouncement in *Christian Benevolent Assn.*, we reject appellant's invitation to apply the prospective use rule to exempt appellant's facility addition and attached land for the tax years in question.[3]

---

3. R.C. 5701.13(C) currently sets forth a statutory procedure for obtaining a prospective use exemption with respect to constructing, adding to, or modifying a nursing home, but no such

**{¶ 15}** For the foregoing reasons, we find that the decision of the BTA affirming the order of the commissioner is neither unlawful nor unreasonable and, accordingly, we affirm.

*Decision affirmed.*

RESNICK, COOK and LUNDBERG STRATTON, JJ., concur.

MOYER, C.J., F.E. SEWENEY and PFEIFER, JJ., dissent.

––––––––––––––––

**FRANCIS E. SWEENEY, SR., J., dissenting.**

**{¶ 16}** I respectfully dissent from the majority's conclusion that appellant is not entitled to a tax exemption for the nursing home addition in tax years 1991 and 1992. As I stated in my dissent in *Christian Benevolent Assn. of Greater Cincinnati, Inc. v. Limbach* (1994), 69 Ohio St.3d 296, 300, 631 N.E.2d 1034, 1037, I believe the prospective use rule can be applied to a nursing home seeking a tax exemption where the taxpayer has taken steps to prepare the property for an exempt use. Although R.C. 5701.13(A) requires a nursing home or home for the aged to obtain a license upon completion of an addition to its facility, the statute's technical requirement of obtaining a license should not be interpreted to prohibit application of the prospective use rule. Even the General Assembly, which has now modified the statute to allow application of the prospective use rule, has recognized that this is the true intent of the statute. The rule should be applied with equal force here as applied to other types of charitable-use property. The key issue remains the same. In order to invoke the prospective use rule, the taxpayer must have taken substantial steps to prepare the property for tax-exempt use.

**{¶ 17}** In this case, appellant received a certificate of need to expand its nursing home facility. Appellant has thereby demonstrated that the addition would

procedure existed under the version of R.C. 5701.13 which applied in *Christian Benevolent Assn. of Greater Cincinnati, Inc. v. Limbach* (1994), 69 Ohio St.3d 296, 631 N.E.2d 1034, or the version of R.C. 5701.13 which applies in the case at bar.

be used in a tax-exempt manner as a nursing home. Consequently, I believe appellant was entitled to apply the prospective use rule and to obtain an exemption for the nursing home addition.

{¶ 18} Accordingly, I would reverse the decision of the Board of Tax Appeals.

MOYER, C.J., and PFEIFER, J., concur in the foregoing dissenting opinion.

_____