OHIO PRESBYTERIAN HOMES, APPELLANT, *v.* KINNEY, COMMISSIONER, APPELLEE.
FRIENDSHIP VILLAGE OF COLUMBUS, OHIO, INC., APPELLANT, *v.* KINNEY, COMMISSIONER, APPELLEE.

[Cite as Ohio Presbyterian Homes *v.* Kinney (1984), 9 Ohio St. 3d 90.]

(Nos. 83-377 and 83-841—Decided February 1, 1984.)

*Swain & Hardin Co., L.P.A.,* and *Mr. Donald H. Swain,* for appellant in case No. 83-377.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, and *Mr. Mark A. Engel,* for appellee in case Nos. 83-377 and 83-841.

*Messrs. Vorys, Sater, Seymour & Pease, Mr. John C. Elam, Mr. Russell P. Herrold, Jr.,* and *Mr. John T. Young,* for appellant in case No. 83-841.

*Messrs. Teaford, Rich & Dorsey, Mr. Jeffrey A. Rich* and *Mr. Matthew T. Fitzsimmons,* urging affirmance for *amicus curiae,* Board of Education of Dublin Local Schools in case No. 83-841.

*Means, Bichimer, Burkholder & Baker Co., L.P.A., Mr. Nicholas A. Pittner* and *Mr. Matthew J. DeTemple,* urging affirmance for *amicus curiae,* Westerville City School District Board of Education in case No. 83-841.

*Messrs. Smith & Schnacke, Mr. Robert J. Hadley* and *Ms. Maryann B. Gall,* urging reversal for *amicus curiae,* Evangelical Retirement Villages, Inc., of Dayton in case No. 83-841.

*Per Curiam.* The issue presented by these appeals is whether the respective appellants have demonstrated their entitlement to exemptions under R.C. 5709.12 by satisfying the requirements necessary to be categorized as a "home for the aged" as set forth in R.C. 5701.13.[1] We find that neither tax-

---

[1] R.C. 5701.13 provides, in part:

"As used in Title LVII of the Revised Code, and for the purpose of other sections of the Revised Code which refer specifically to Chapter 5701, or section 5701.13 of the Revised Code, a 'home for the aged' means a place of residence for aged persons which meets all of the following standards:

"(A) It is owned or operated by a corporation, unincorporated association, or trust of a charitable, religious, or fraternal nature, which is organized and operated not for profit, and which is not formed for the pecuniary gain or profit of, and whose net earnings or any part thereof is not distributable to, its members, trustees, officers, or other private persons.

"(B) Not more than ninety-five percent of the expenses of caring for the residents of such home comes from the residents or is paid to the home in behalf of the residents. * * *

"* * *

"(D) The following services are available, as needed by residents of the home, and shall be provided, at or below reasonable cost, for the life of each resident, without regard to his ability to continue payment for the full cost thereof:

"(1) Lodging;

"(2) Prepared food;

"(3) Custodial care;

"(4) Medical and nursing care;

"(5) Such additional services as may be required for the full care of the resident.

"A service is provided, within the meaning of this division, if the home pays, or guarantees

payer complies with the strict requirements of R.C. 5701.13 and, therefore, affirm the respective decisions of the Board of Tax Appeals.

I

In case No. 83-841, we are initially faced with the question of whether appellant, Friendship Village, met the ninety-five percent requirement of R.C. 5701.13(B). Under the statute, not more than ninety-five percent of the expenses required to care for the residents may be borne by such residents or paid on their behalf.

In claiming that it satisfied this requirement, appellant considered as revenue only that income received from those individuals admitted pursuant to a residency agreement, and excluded all income generated from those individuals admitted to the health care center pursuant to a patient's agreement. Appellant makes a distinction between income received from a resident and that received from a patient. It is with this distinction that the board disagreed and we concur in its decision.

The purpose of R.C. 5701.13(B) is to ensure that a home for the aged is to some extent operated in a charitable manner. The statute contemplates that at least five percent of the operating costs come from outside sources. If we were to uphold appellant's distinction, it would be receiving the required five percent from paying customers admitted to its health care facility. This is certainly not charitable in nature as envisioned by the General Assembly.

In addition, appellant operates an integrated complex with various facilities to meet the needs of the elderly. Appellant cannot be permitted to satisfy the requirements of R.C. 5701.13(B) by artificially creating a distinction in the services received. We, therefore, hold as a matter of law that a taxpayer must satisfy R.C. 5701.13(B) by including all income received from the aged who were provided any type of care or service from the taxpayer.

After a review of the record, we agree with the finding made by the board for the fiscal year ending June 30, 1981. Appellant's income from residents and patients was $3,711,438, and the expenses incurred in caring for those individuals totaled $3,667,323. The income over expense ratio of 1.012 clearly demonstrates that the aged paid at least one hundred percent of the total cost of their care.

Finally, in case No. 83-841, we must determine whether appellant satisfies the requirements of R.C. 5701.13(D). This section expresses the legislative intent that a home for the aged shall provide certain basic services for the life of its residents without regard to their ability to pay for the full costs thereof.

Pursuant to the terms of the residency agreement, appellant possesses the right to terminate the occupancy of a resident for the failure to pay the

---

the payment, for all reasonable costs of securing such service on behalf of each resident and it can be secured without unreasonable inconvenience to the residents.

"Exemption from taxation shall be accorded, on proper application, only to those homes which meet the standards and provide the services specified in this section."

balance of the entrance endowment or monthly service fees. Appellant has the same right to termination with respect to a health care patient for non-payment of any charges due the facility.

We recently were faced with a similar situation in the case of *S.E.M. Villa II* v. *Kinney* (1981), 66 Ohio St. 2d 67 [20 O.O.3d 60]. In *S.E.M.*, a non-profit corporation operating a congregate living facility that could require residents to vacate the facility if they were not able to mentally or physically care for themselves. We found that the facility was not entitled for a tax exemption under R.C. 5709.12 as it did not satisfy the requirements of R.C. 5701.13(D), in that it was not obligated to provide the services for the life of each resident.

Based on our holding in *S.E.M.*, we find that appellant's possession of the right to terminate the residency of an individual does not comply with R.C. 5701.13(D). Although there was testimony of appellant's policy to provide hardship discounts to residents, the mere possession of the right to terminate an occupancy violates the statute whether it is exercised or not.

Therefore, it appears from the record before us that the board was correct in its determination that appellant, Friendship Village, did not comply with the strict requirements of R.C. 5701.13(B) and (D).

## II

In case No. 83-377, the board examined numerous financial statements belonging to appellant, Ohio Presbyterian Homes, and concluded that the statements were not entirely self-explanatory regarding compliance with R.C. 5701.13(B). In the absence of testimony explaining the statements, the board denied appellant's application for exemption.

This court has consistently held that "in order for a taxpayer to derive the benefit of a statutory exemption from taxation, it must be proven that the property in question satisfies each and every requirement of the exemption statute." *Sun Oil Company* v. *Lindley* (1978), 56 Ohio St. 2d 313, 317 [10 O.O.3d 439], citing *Dayton Sash & Door Co.* v. *Kosydar* (1973), 36 Ohio St. 2d 120 [65 O.O.2d 306], and *Ohio Children's Society* v. *Porterfield* (1971), 26 Ohio St. 2d 30 [55 O.O.2d 17]. After an extensive review of the record, we are not convinced that appellant conclusively established that it complied with R.C. 5701.13(B). Therefore, we find the decision of the board to be neither unreasonable nor unlawful.

As an alternative basis for denying appellant's application, the board concluded that appellant's facility could not be classified as a "home for the aged" because it does not provide several of the services mandated in R.C. 5701.13(D)(1) through (5). Specifically, the board found that appellant did not provide the food preparations, custodial care, and medical and nursing care required under the statute.

R.C. 5701.13(D)(2) requires a "home for the aged" to make prepared food available to its residents. Appellant only offers an evening meal. Absent the availability of morning and noon meals, the board found that appellant

does not satisfy the statutory requirements. We find this conclusion to be within the spirit of R.C. 5701.13(D) and neither unreasonable nor unlawful.

The custodial care provided by appellant consists of general house-keeping services, floor communications and a nurse call system. The board reasoned that although these services are commendable, appellant does not provide personal services such as aiding its residents in dressing, eating, or bathing. Clearly, this conclusion is neither unreasonable nor unlawful in view of our affirmance of a similar conclusion by the board in *S.E.M.*, *supra*, wherein the applicant did not provide these personal services.

Furthermore, in *S.E.M.*, the taxpayer employed a nurse who worked forty hours a week and did not dispense medication. This court agreed with the board's conclusion that such services were insufficient to qualify as medical and nursing care pursuant to R.C. 5701.13(D)(4). In the case *sub judice*, the record conclusively establishes that appellant employs one staff nurse who works between two and ten hours a week, and one physician who visits the facility one hour a week to provide health care instructions. The nurse and physician do not engage in medical treatment on the premises. In light of our holding in *S.E.M.*, the board's conclusion that appellant provides little or no medical and nursing care was certainly justified.

Finally, appellant contends that the services contained in R.C. 5701.13(D) must only be made available as needed by residents. Appellant argues that the board erred by requiring that all residents receive the services enumerated within the aforementioned provision. Appellant's argument miscontrues the board's decision as the record is void of any determination by the board that all residents must receive the services set forth in subsection (D) of R.C. 5701.13. Instead, the board correctly concluded in accord with our decisions in *Toledo Retirement Living* v. *Board of Tax Appeals* (1971), 27 Ohio St. 2d 255 [56 O.O.2d 153], and *S.E.M.*, *supra*, that appellant does not make available to its residents several of the services required to be offered by a "home for the aged" seeking an exemption from taxation.

We conclude, therefore, that the board was correct in its determination that appellant, Ohio Presbyterian Homes, did not comply with the mandates of R.C. 5701.13(B) and (D).[2]

---

[2] We feel compelled to address one final issue raised by appellant. However, in view of our decision, it is not dispositive of this appeal.

The board found, in part, that appellant's fifty-five year age requirement for occupancy of the ranch style apartments was too young to be considered "aged" and, as such, appellant was not operating a "home for the aged" pursuant to R.C. 5701.13. The General Assembly chose not to define the term "aged" in the aforementioned statute. This omission reflects the legislative intent to incorporate a certain degree of flexibility into the statute.

In addition, the enactment does not require all persons residing in a facility to be aged. Instead, the statute requires certain mandatory services be made available in order to qualify for the exemption. These services directly relate to the care of elderly people. Therefore, analysis must focus on the satisfaction of these statutory requirements as opposed to an arbitrary definition of the term "aged."

Accordingly, we affirm the respective decisions of the Board of Tax Appeals.

*Decisions affirmed.*

CELEBREZZE, C.J., W. BROWN, SWEENEY, HOLMES, C. BROWN and WISE, JJ., concur.

LOCHER, J., concurs in part and dissents in part.

WISE, J., of the Fifth Appellate District, sitting for J. P. CELEBREZZE, J.

LOCHER, J., concurs in part and dissents in part.

I

Since I believe the majority misconstrues the purpose of the tax exemption as defined in R.C. 5701.13, I concur in the judgment only. I agree that neither home has established its compliance with 5701.13(B). I further agree that appellant Friendship Village has not complied with R.C. 5701.13(D). With regard to 5701.13(D) and appellant Ohio Presbyterian Homes, however, the majority and I part company.

R.C. 5701.13(D) requires, *inter alia,* various listed services to be made available to residents *as needed.* This should not be interpreted as a requirement that the services be made available around-the-clock, regardless of need, as the majority's decision implies. To require constant medical and nursing care availability on the premises, for example, would be extremely cost-ineffective. Since the increasing costs of building and maintaining these homes are passed directly to the residents, such an unnecessary expense becomes an even greater burden to them. Many of these residents are on a fixed income as well. In the same vein, "[c]ustodial care" could not have meant constant aid in dressing, eating, and bathing, since the exemption is expressly made available to homes for *all* aged people, not just those in constant need of such personal assistance.

R.C. 5701.13 defines, *inter alia,* when a service is provided:

"A service is provided, within the meaning of this division, * * * [if] it can be secured without unreasonable inconvenience to the residents."

I believe that Ohio Presbyterian Homes (appellant) has met this standard. The majority determined that three of the five services listed in 5701.13(D) were not sufficiently provided by appellant, which I assert is erroneous.

R.C. 5701.13(D)(2) requires the availability of "[p]repared food." Appellant provides one meal a day for its residents, which is quite sufficient to satisfy the declining appetite of an elderly person. Again, I stress that the purpose of the exemption is to benefit *all* elderly, not to make a distinction between homes that serve three hot meals as opposed to one.

For similar reasons I believe that appellant has met the subdivision (D)(3)

requirement of custodial care. Although, in *S.E.M. Villa II* v. *Kinney* (1981), 66 Ohio St. 2d 67 [20 O.O.3d 60], this court implied that custodial care meant "assisting a resident in dressing, eating, bathing or cleaning" (*id.* at 69), upon reconsideration this court should not hold to such a strict standard. Nowhere did the legislature equate "aged" with "infirm." The exemption is not limited solely to homes with infirm residents.

Finally, the subdivision (D)(4) "[m]edical and nursing care" requirement is satisfied here as well. The employment of a full-time medical staff would increase costs outlandishly without concomitant benefit. The availability of nearby health care without undue inconvenience to the residents is all that is required under the statute.

The regrettable underlying result of the majority's interpretation of this exemption is another example of our tendency to turn our backs on those people who have worked hard in paving the way for their successors. It is quite easy to look at our older folks in terms of the present and forget what has been accomplished in the past. It is hoped that the majority's interpretation of R.C. 5701.13(D) will not be the sole reason for denying future exemptions.

## II

The statutory object in granting tax exemptions for facilities that provide care for our senior citizens is not achieved through the hypertechnical analysis promulgated by the majority. The care of our elder citizens is a matter of great public concern and should be reflected in public policy. The statute being interpreted herein represents legislation designed to exempt housing facilities for this state's older citizens. This type of housing is particularly important as a bridge for the older citizens, who must in many cases leave their abode and take intermediate residence until they are sufficiently infirm to require a nursing home. This is why reference has been made to the mistaken dichotomy between those citizens who are "aged" and those who are "infirm." The majority herein, and the Board of Tax Appeals, apparently does not appreciate this important distinction, in their denial of benefits to the "aged" in their twilight years.

I honestly believe the great majority of our senior citizens would prefer the temperate climate of the water belt, with changing seasons, to the perpetual heat of the southern "swelter" belt. The court's actions today effectively consign our elder citizens to the swelter belt by removing any financial incentive to remain in our state. I do not, and cannot, believe the legislature meant to consign those citizens who have made the greatest contributions to our state to the harsh environment of the swelter-belt.

The citizens whom I write of today have contributed and continue to contribute to the well-being of the state of Ohio. Those citizens who have gone through the crucible of living, the senior citizens, whose wealth lies foremost in their experience and whose character has developed through living in Ohio, deserve much better than what this court chooses to do today.

The distinguished Judge Schneider in *Philada Home Fund* v. *Bd. of Tax*

*Appeals* (1966), 5 Ohio St. 2d 135, 140 [34 O.O.2d 262] (dissenting opinion), stated the crux of my dissent today:

"There are many attitudes as to the office of a dissenting opinion. I employ it in this case not so much to fault the majority as to spread upon the record that the instant case * * * becloud[s] the tax exempt status, if they do not remove it completely, of every home for the aged * * *."

I urge the legislature to weigh the results of this decision against the contribution of this state's older citizens. I hope the result of this dissent will be to spur the legislature into remedying the technicalities that would negate the debt we owe our senior citizens. Therefore I dissent.