**BOARD OF EDUCATION OF DUBLIN CITY SCHOOL DISTRICT, Appellee,**

v.

**TRACY, Tax Commr., et al., Appellants.**

[Cite as *Dublin City School Dist. Bd. of Edn. v. Tracy* (1998), 126 Ohio App.3d 603.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 97APH06–780.

Decided March 12, 1998.

*Teaford, Rich & Wheeler* and *Jeffrey A. Rich,* for appellee board of education.

*Betty D. Montgomery,* Attorney General, and *Janyce C. Katz,* Assistant Attorney General, for appellant Roger W. Tracy.

*Vorys, Sater, Seymour & Pease, Raymond D. Anderson* and *Carol Mahaffey,* for appellant Friendship Village.

DESHLER, Presiding Judge.

This is an appeal by Friendship Village of Dublin, Ohio, Inc. ("Friendship Village"), from an order of the Ohio Board of Tax Appeals ("BTA"), reversing the Tax Commissioner's grant of a real property tax exemption to Friendship Village.

Friendship Village, an Ohio nonprofit corporation, owns property located in the Dublin City School District. The property that is the subject of this appeal consists of 20.714 acres of land that has been improved with two multistory buildings containing individual residential units. The two residential units are connected to a one-story facility licensed as a sixty-bed skilled nursing care facility. The complex also has a forty-six-unit licensed rest home ("The Meadows") and a common area.[1]

Friendship Village operates under a "life care" concept, whereby residents enter into a residency agreement which requires payment of a one-time entry (endowment) fee and an adjustable monthly service fee. As of January 1, 1991, there were two hundred twenty-seven living units in the residential apartment complex portion of Friendship Village. The residential units are available in a number of different styles (*i.e.,* alcove, studio, one-, two- and three-bedroom apartments), and the units each have a kitchen, bathroom, and living area. Residents of these units are provided access to various services (*i.e.,* janitorial, transportation, meals) as well as certain health-related services and planned social activities.

The Board of Trustees of Friendship Village has established three criteria for determining eligibility for prospective residents: (1) an applicant or his or her spouse must be sixty-two years of age or older; (2) an applicant must demon-

---

1. The parties stipulated before the BTA that neither the licensed nursing home nor the licensed rest home is at issue in this matter.

strate evidence of being able to pay the entrance fees and the current monthly fees; and (3) applicants must be "ambulatory and able to maintain themselves independently in their apartment." Further, the eligibility requirements state that the "life-care aspect of the Village will provide health care to residents should the need arise *after* occupancy, but a person cannot be accepted for residency if assistance or health care is currently necessary." (Emphasis *sic.*)

Friendship Village filed with the Tax Commissioner an application for exemption from real property taxation, seeking an exemption, pursuant to R.C. 140.08, for the 1993 tax year for certain improvements to real property, based on the applicant's contention that "the Village is a 'hospital facility' as defined in R.C. 140.01." The application for exemption was opposed by appellee, the Dublin Board of Education ("school board").

On May 15, 1995, an attorney examiner made a recommendation that the subject property (except for office space used as a bank office) should be granted exemption for the tax year 1993. Specifically, the attorney examiner determined:

"Amended Substitute Senate Bill No. 332, effective January 10, 1991, amended R.C. 140.08 specifically to eliminate independent living from the hospital facilities exemption. Section 3 of Am.Sub. S.B. No. 332, however, exempts an independent living facility that was acquired, constructed, financed, or refinanced with obligations issued pursuant to R.C. Chapter 140 prior to the effective date of the act. The facts related to this application fit the exception provided in Section 3. Friendship Village was financed with obligations issued prior to the effective date of Am.Sub. S.B. No. 332. Consequently, the independent living area is tax exempt."

The school board filed objections with the tax commissioner, asserting that the unlicensed residential units at Friendship Village did not qualify for exemption under R.C. 140.08. More specifically, the school board asserted that the "obligations" referred to in Section 3 of Am.Sub.S.B. No. 332 only applied to "hospital facilities" as those terms are defined in R.C. 140.01.

By journal entry dated June 28, 1995, the Tax Commissioner held that the subject property was exempt from taxation, concluding that Section 3 of Am.Sub. S.B. No. 332 "specifically expands the earlier R.C. 140.08 exemption to include independent living facilities. If this had not been the intended result, there would have been no need for the addition to R.C. 140.08."

On July 21, 1995, the school board filed a notice of appeal with the BTA from the entry of the Tax Commissioner. The parties entered into certain stipulations before the BTA, including the stipulation that "the property which is the subject of this appeal is the independent living units (in the apartment complex) and supporting areas and land as described in the final determination of the Tax

Commissioner." The parties further stipulated that "the property in dispute is an 'independent living facility' as defined in the first sentence of Section 140.01(N) of the Revised Code."

On April 1, 1996, a hearing was conducted by a BTA attorney examiner, who heard the testimony of three witnesses called on behalf of Friendship Village. By decision and order filed June 6, 1997, the BTA, by a two-to-one vote, found that the residential units of Friendship Village did not qualify for an exemption under R.C. 140.08, and thus the BTA reversed the decision of the Tax Commissioner.

On appeal, Friendship Village sets forth the following assignments of error for review:

"Assignment of Error No. 1

"The Board of Tax Appeals ('BTA') erred by ignoring its prior unanimous conclusion in *Dublin School Dist. Bd. of Edn. v. Limbach* (July 17, 1992), BTA Case No. 89–K–23, unreported, n. 1, when, with respect to Section 3 of Amended Substitute Senate Bill Number 332 of the 118th Ohio General Assembly, 1990 Ohio Laws 1676 ('Section 3 of Am.Sub. S.B. No. 332'), it stated:

" 'Effective October 30, 1989, R.C. 140.08 deleted the reference to R.C. 133.06 and substituted R.C. 133.08. This section has again been amended effective January 10, 1991. While both parties argue over the General Assembly's intent in enacting the current version of the statute, we do not find the current R.C. 140.08 to be necessarily dispositive of the issues herein raised. *Nevertheless, we believe that the revised version of this statute, with an express prospective application, supports this Board's conclusion that Friendship Village was entitled to the exemption* under former R.C. 140.08 in effect for the period at issue.' (Emphasis added.)

"Assignment of Error No. 2

"The BTA erred in failing to find that the Disputed Property—as defined hereinafter—is 'an independent living facility' as described in R.C. 140.01(N) that was acquired, constructed, financed, or refinanced with obligations issued pursuant to R.C. Chapter 140 prior to the effective date of Section 3 of Am.Sub. S.B. No. 332 and is exempt from taxation pursuant to uncodified Section 3 of Am.Sub. S.B. No. 332.

"Assignment of Error No. 3

"The BTA erred in failing to find that the Disputed Property was not part of a 'hospital facility' as defined in R.C. 140.01(E) that was acquired, constructed, financed, or refinanced with obligations issued pursuant to R.C. Chapter 140

within the meaning of and prior to the effective date of uncodified Section 3 of Am.Sub. S.B. No. 332.

"Assignment of Error No. 4

"The BTA erred by finding that the Disputed Property was not 'a self-care facility * * * used as a residence for elderly persons' as described in R.C. 140.01(N).

"Assignment of Error No. 5

"The BTA erred in presuming that the Supreme Court of Ohio, in *Dublin School Dist. Bd. of Edn. v. Limbach* (1994), 69 Ohio St.3d 255, 631 N.E.2d 604, concluded that the residential units of the Village did not constitute a 'self-care facility.'

"Assignment of Error No. 6

"The BTA erred in not concluding that the Disputed Property 'was acquired, constructed, financed, or refinanced with obligations issued pursuant to R.C. Chapter 140,' even though in *Dublin School Dist. Bd. of Edn., supra,* 'the Supreme Court acknowledged that the subject property was refinanced by obligations issued by a public hospital agency; and, parenthetically, the Court must have considered the proceeds were lawfully expended in the construction of the hospital facility of which the residential apartments were a part * * *.'

"Assignment of Error No. 7

"The BTA erred in failing to find that the Disputed Property is exempt from real property taxation pursuant to uncodified Section 3 of Am.Sub. S.B. No. 332 commencing with tax year 1991 for the life of the obligations."

Although Friendship Village separately assigns the above errors, they are not separately argued in its brief; rather, the issues raised are set forth under a single "proposition of law" in contravention of App.R. 16 and App.R. 12. For purposes of review, we will decide the merits of this appeal based on the proposition of law presented, which we will treat as an assignment of error. See *Hilliard City School Dist. Bd. of Edn. v. Franklin Cty. Bd. of Revision* (Jan. 31, 1995), Franklin App. No. 94APH07–967, unreported, 1995 WL 41653. Friendship Village's proposition of law states as follows:

"The Commissioner's determination that the subject property is 'an' independent living facility' as described in Division (N) of R.C. 140.01 and is exempt from taxation pursuant to Section 3 of Am.Sub. S.B. No. 332 is reasonable and lawful. The BTA's decision and order reversing the Commissioner's determination is unreasonable and unlawful, and pursuant to R.C. 5717.04, must be reversed and vacated."

■ The primary issue before this court is whether the BTA erred in finding that the Friendship Village residential units did not qualify for real property tax exemption status under R.C. Chapter 140. Friendship Village's basic contention is that the independent living units are exempt from taxation pursuant to Section 3 of Am.Sub. S.B. No. 332.

At the outset, we note that the Friendship Village complex has been the subject of prior litigation. The history of this litigation was set forth by the Ohio Supreme Court in *Dublin School Dist. Bd. of Edn. v. Limbach* (1994), 69 Ohio St.3d 255, 256, 631 N.E.2d 604, 605, in which the court noted that the Friendship Village complex was initially "acquired through hospital facilities revenue bonds authorized and issued by the Franklin County Hospital Commission ('FCHC')." Pursuant to a 1981 bond validation proceeding, the Franklin County Court of Common Pleas Court "determined that the FCHC 'has authority to issue' the revenue bonds 'as valid special obligations' of the county, and that the existing facilities 'qualif[y] within the definition of "Hospital Facilities" * * * in * * * [R.C.] 140.01.' " *Id.*

On January 7, 1987, Friendship Village applied for real property tax exemption for the year 1986, and the Tax Commissioner granted the exemption, finding that the property was used exclusively for hospital facility purposes under former R.C. 140.08. *Id.* The BTA subsequently affirmed the commissioner's determination, and both the school board and Friendship Village appealed. In *Dublin School Dist.*, the Ohio Supreme Court held that the portion of the subject property used for residential purposes was not entitled to tax exemption as property used as hospital facilities pursuant to former R.C. 140.08. *Id.* at 258, 631 N.E.2d at 606–607.

This court's standard of review for an appeal from the BTA is set forth in R.C. 5717.04, which states:

"If upon hearing and consideration of such record and evidence the court decides that the decision of the board appealed from is reasonable and lawful it shall affirm the same, but if the court decides that such decision of the board is unreasonable or unlawful, the court shall reverse and vacate the decision or modify it and enter final judgment in accordance with such modification."

■ The Ohio Supreme Court "has consistently held that 'in order for a taxpayer to derive the benefit of a statutory exemption from taxation, it must be proven that the property in question satisfies each and every requirement of the exemption statute.' " *Ohio Presbyterian Homes v. Kinney* (1984), 9 Ohio St.3d 90, 94, 9 OBR 319, 322, 459 N.E.2d 500, 504. Further, " '[w]here a statute defines terms used therein which are applicable to the subject matter affected by the legislation, such definition controls in the application of the statute.' " *Dublin*

*School Dist., supra,* 69 Ohio St.3d at 258, 631 N.E.2d at 606, quoting *Woman's Internatl. Bowling Congress, Inc. v. Porterfield* (1971), 25 Ohio St.2d 271, 54 O.O.2d 383, 267 N.E.2d 781, paragraph two of the syllabus.

Am.Sub.S.B. No. 332, effective January 10, 1991, amended R.C. 140.08. R.C. 140.08 provides as follows:

"(A) Except as otherwise provided in divisions (B)(1) and (2) of this section, all hospital facilities purchased, acquired, constructed, or owned by a public hospital agency, or financed in whole or in part by obligations issued by a public hospital agency, and used, or to be used when completed, as hospital facilities, and the income therefrom, are exempt from all taxation within this state, including ad valorem and excise taxes, notwithstanding any other provisions of law, and hospital agencies are exempt from taxes levied under Chapters 5739. and 5741. of the Revised Code. The obligations issued hereafter under section 133.08, 140.06, or 339.15 of the Revised Code or Section 3 of Article XVIII, Ohio Constitution, to pay costs of hospital facilities or to refund such obligations, and the transfer thereof, and the interest and other income from such obligations, including any profit made on the sale thereof, is free from taxation within the state.

"(B)(1) Division (A) of this section does not exempt independent living facilities from taxes levied on property or taxes levied under Chapters 5739. and 5741. of the Revised Code. If an independent living facility or part of such facility becomes an adult care facility, nursing home, or residential care facility on or until January 10, 1991, that part of the independent living facility that is an adult care facility, nursing home, or residential care facility is exempt from taxation subject to division (B)(2) of this section on and after the date it becomes an adult care facility, nursing home, or residential care facility.

"(2) Division (A) of this section exempts nursing homes, residential care facilities, and adult care facilities from taxes levied on property and taxes levied under Chapters 5739. and 5741. of the Revised Code only after all obligations issued to finance such homes or facilities, or all refunding or series of refundings of those obligations, are redeemed or otherwise retired." [2]

---

2. Prior to the enactment of Am.Sub.S.B. No. 332, R.C. 140.08 stated as follows:

"All hospital facilities purchased, acquired, constructed, or owned by a public hospital agency, or financed in whole or in part by obligations issued by a public hospital agency, and used, or to be used when completed, as hospital facilities, and the income therefrom, are exempt from all taxation within this state, including ad valorem and excise taxes, notwithstanding any other provisions of law, and hospital agencies are exempt from taxes levied under Chapters 5739. and 5741. of the Revised Code. The obligations issued hereafter under section 133.08, 140.06, or 339.15 of the Revised Code or Section 3 of Article XVIII, Ohio Constitution, to pay costs of hospital facilities or to refund such obligations, and the transfer thereof, and the interest and other income from such obligations, including any profit made on the sale thereof, is free from taxation within the state." 143 Ohio Laws, Part II, 3534.

Section 3 of Am.Sub.S.B. No. 332 ("Section 3") states as follows:

"(A) Notwithstanding division (B)(1) of section 140.08 of the Revised Code as amended by this act, an independent living facility as described in division (N) of section 140.01 of the Revised Code that was acquired, constructed, financed, or refinanced with obligations issued pursuant to Chapter 140. of the Revised Code prior to the effective date of this act shall be exempt from property and sales and use taxation for tax years ending on or before the latest of:

"(1) The thirty-first day of December of the calendar year in which the last of such original or refunding obligations outstanding on the effective date of this act is redeemed or otherwise retired;

"(2) The thirty-first day of December of the calendar year in which the last of obligations issued after the effective date of this act to refund obligations outstanding on the effective date of this act is redeemed or otherwise retired, but if the last stated maturity of the obligations so refunded was more than five years from the date of issuance of the refunded obligations, the thirty-first day of December of the calendar year in which the last of the refunded obligations would have been retired upon its stated maturity had it not been refunded;

"(3) December 31, 1994.

"The facility shall become taxable on the first day of January next following the applicable date set forth in division (A)(1), (2), or (3) of this section.

"(B) For purposes of division (A) of this section, the date of issuance of obligations shall be the date on which the obligations were delivered by the issuer against payment therefor." 143 Ohio Laws, Part I, 1695–1696.

Thus, while Am.Sub. S.B. No. 332 amended R.C. 140.08 to specifically subject to taxation "independent living facilities" for the aged that are financed with bonds, Section 3 of the act provides a tax exemption to "an independent living facility as described in division (N)" of R.C. 140.01 "that was acquired, constructed, financed or refinanced with obligations issued pursuant to Chapter 140 of the Revised Code prior to the effective date of this act."

An "independent living facility" is defined under R.C. 140.01(N) to mean "any self-care facility or other housing facility designed or used as a residence for elderly persons." The term "obligations," as defined under R.C. 140.01(H), "means bonds, notes, or other evidence of indebtedness or obligation, including interest coupons pertaining thereto, issued or issuable by a public hospital agency to pay costs of hospital facilities." R.C. 140.01(E) defines the term "hospital facilities" as follows:

"[B]uildings, structures and other improvements, additions thereto and extensions thereof, furnishings, equipment, and real estate and interests in real estate,

used or to be used for or in connection with one or more hospitals, emergency, intensive, intermediate, extended, long-term, or self-care facilities, diagnostic and treatment and out-patient facilities, facilities related to programs for home health services, clinics, laboratories, public health centers, research facilities, and rehabilitation facilities, for or pertaining to diagnosis, treatment, care, or rehabilitation of sick, ill, injured, infirm, impaired, disabled, or handicapped persons, or the prevention, detection, and control of disease, and also includes education, training, and food service facilities for health professions personnel, housing facilities for such personnel and their families, and parking and service facilities in connection with any of the foregoing; and includes any one, part of, or any combination of the foregoing; and further includes site improvements, utilities, machinery, facilities, furnishings, and any separate or connected buildings, structures, improvements, sites, utilities, facilities, or equipment to be used in, or in connection with the operation or maintenance of, or supplementing or otherwise related to the services or facilities to be provided by, any one or more of such hospital facilities."

In considering the above statutory definitions, the BTA noted that "in order to qualify as 'obligations' for purposes of R.C. Chap. 140., bonds must be used 'to pay costs of hospital facilities.' " In the proceedings before the BTA, Friendship Village argued that its residential units met the statutory definition of "hospital facilities." More specifically, Friendship Village argued that the disputed property was an "independent living facility," defined in R.C. 140.01(N) to include a "self-care facility," and further, that the term "self-care facilit[y]" was cross-referenced as a subcategory under the definition of "hospital facilities" in R.C. 140.01(E). Thus, Friendship Village argued in its brief before the BTA that "[b]ecause the Disputed Property is an 'independent living facility,' which by definition is a self-care facility, then *ipso facto,* the Disputed Property is in fact and law a 'hospital facility.' "

The BTA, in addressing this contention, held:

"While it is true that the parties stipulated that the residential units at issue are 'independent living facilities,' they did not agree that such facilities constitute 'self-care facilities.' This distinction is critical. The definition of an 'independent living facility' includes not only a 'self-care facility,' but also 'other housing facility designed or used as a residence for elderly persons.' By definition, an independent living facility may therefore include a wide array of elderly residential arrangements, only a portion of which would constitute a self-care facility falling within the definition of 'hospital facilities' entitled to exemption."

Friendship Village contends that the BTA erred in attempting to distinguish between the terms "self-care facility" and "other housing facility" as used in R.C. 140.01(N). Friendship Village argues that the intent of the General Assembly, in

deciding to "grandfather" a tax exemption for independent living facilities that had already been constructed with hospital facility bonds, was to provide an exemption for *all* such independent living facilities.

The BTA, in finding such a distinction to be meaningful, proceeded to consider whether the Friendship Village residential complex constituted a self-care facility or some other form of housing for the elderly. In noting that R.C. Chapter 140 does not define the term "self-care facility," the BTA looked for guidance in the Ohio Supreme Court's decision in *Dublin School Dist., supra.* As noted above, the court in *Dublin School Dist.* determined that the portion of Friendship Village used for residential purposes was not entitled to tax exemption as property used as hospital facilities under former R.C. 140.08. More specifically, the court held as follows:

"Under R.C. 140.01(E), 'hospital facilities,' *inter alia*, consists of buildings, improvements, equipment and real estate where health or hospital services, diagnosis, treatment or research is made available for sick, injured, disabled or handicapped persons. The portion of the subject property that is used for residential purposes does not meet that definition. Rather, that portion of the property appears to be typical living quarters for the personal use of residents. In addition, with regard to the residential use of the purported 'hospital facilities,' the term specifically includes education, training and food service facilities for health professions personnel, and housing facilities for such personnel and their families. R.C. 140.01(E). Since there is no evidence that the residents of Friendship Village were health professions personnel, the exemption does not apply to those parts of the subject property that are used for residential purposes." *Id.*, 69 Ohio St.3d at 258–259, 631 N.E.2d at 606–607.

In considering the court's pronouncement in *Dublin School Dist.*, the BTA held that "we must presume that the Supreme Court concluded that the residential units at issue did not constitute self-care facilities because included within the definition of 'hospital facility,' a definition which has remained unchanged, was the term self-care facilities."

Friendship Village asserts that the decision in *Dublin School Dist.* only determined that the subject property was exempt from real property taxation for tax year 1986 under former R.C. 140.08, and that the Supreme Court did not consider Section 3 or the tax status of the property for tax year 1991 and later years. The BTA held, however, that even assuming the *Dublin School Dist.* decision to be inapplicable to the instant case, "we would still conclude that the residential units are not self-care facilities." Specifically, the BTA, while noting that "self-care facility" was not defined statutorily, concluded that, viewed in the context of R.C. Chapter 140, the definition of the term required it to be more than just a residential apartment complex.

In addressing this issue, the BTA noted that in a prior opinion by the Ohio Attorney General, 1980 Ohio Atty.Gen.Ops. No. 80–078, the term "self-care facility" was defined as "a facility in which persons who are ill, disabled or otherwise infirm receive some sort of care or treatment while residing in an environment that is equipped in such as way to enable them to cope with the demands of daily living on an individual basis." The BTA then concluded:

"[I]f we were to adopt the preceding definition and apply it to the facts of this case, the conditions imposed upon admission by Friendship Village clearly demonstrate that its residential units are not 'self-care facilities.' In order to become a resident at the subject property, the applicant must satisfy three key requirements related to age, finance and health. The latter requirement is conditioned not upon poor health, as would be expected of a facility meeting the definition suggested by the preceding Opinion, but rather upon *good* health. In fact, if after admission a resident's health fails and that resident becomes unable to tend for himself or herself, the resident may no longer remain in this portion of the facility. Although Friendship Village presented evidence before this Board intended to demonstrate that many of its residents, as well as the elderly population throughout the entire United States, suffer a variety of degenerative health disorders, the fact remains that healthy, elderly individuals in need of no supportive care may apply and be accepted for residence at the units at issue in this case.

"Thus, in the context of R.C. Chap. 140., and given the court's express pronouncement in *Dublin City School Dist. Bd. of Edn.*, *supra*, we conclude that Friendship Village's residential units are not 'self-care facilities' as that term is used in R.C. 140.01(E)."

Upon review, we find that the BTA's determination that the subject property was not entitled to exemption under R.C. 140.08 was reasonable and lawful. While Section 3 provides an exemption for an independent living facility that was "refinanced with obligations issued pursuant to Chapter 140. of the Revised Code," R.C. 140.01(H) defines "obligations" to mean "bonds * * * issued * * * by a hospital agency to pay costs of hospital facilities." In *Dublin School Dist.*, the Ohio Supreme Court noted that the term "hospital facilities," as defined under R.C. 140.01(E), includes "buildings, improvements, equipment and real estate where health or hospital services, diagnosis, treatment or research is made available for sick, injured, disabled or handicapped persons." *Id.*, 69 Ohio St.3d at 258, 631 N.E.2d at 606. In considering the nature of the residential units ·at Friendship Village, the court concluded that "[t]he portion of the subject property that is used for residential purposes does not meet that definition," but rather "appears to be typical living quarters for the personal use of residents." *Id.*

Further, the definition of "hospital facilities," as set forth in R.C. 140.01(E), contains the term "self-care facilities" in the context of enumerated facilities "for or pertaining to diagnosis, treatment, care, or rehabilitation of sick, ill, injured, infirm, impaired, disabled, or handicapped persons." Assuming that we are required to reach the issue whether the residential units are "self-care facilities," the use of that term under the definition of "hospital facilities" indicates that the purpose of a self-care facility, as contemplated under the statute, is to provide medical and health related services for sick, injured, disabled or handicapped persons. The residential units at Friendship Village do not meet that requirement. Keeping in mind that, in order to derive the benefit of a statutory tax exemption, the subject property must satisfy each requirement of the exemption statute, we hold that the BTA did not err in finding that the residential units of Friendship Village do not qualify for exemption under Section 3.

Based upon the foregoing, the assignments of error of Friendship Village are without merit and are overruled, and the judgment of the BTA is hereby affirmed.

*Judgment affirmed.*

PEGGY BRYANT and PETREE, JJ., concur.